## Case No. 11,266.

### PONSFORD v. JOHNSON et al.

[2 Blatchf. 51.] [1]

Circuit Court, S. D. New York.   July 2, 1847.

MARRIAGE AND DIVORCE—LAW OF DOMICIL—PLACE WHERE CONTRACTED—VALIDITY—ADULTERY.

1. As a general rule, the capacity or incapacity to marry depends on the law of the place where the marriage is contracted, and not on the place of the domicil of the parties.

2. Prior to 1826, P. was married in New York to H., who, in that year, obtained from the court of chancery of New York a decree of divorce on account of the adultery of P. The decree dissolved the marriage, and freed each of the parties from the obligations of the same. The act under which the divorce was granted provided, that the party convicted of adultery should not marry again until the other should be actually dead. In 1837, while H. was still living, P. and A., both then residing in New York, were married to each other in New Jersey, in due form and according to the laws of that state. A. then knew nothing of the divorce or of H., and had only heard that P. had had a wife who was dead. A. was married in New Jersey in compliance with the wishes of B., and with no intention on her part of evading any law of New York. P. died in 1845, intestate, domiciled at the time in New York. Under the laws of New York, A., if his widow, was entitled to a share of his personal estate. The defendant J. obtained administration in New York on P.'s estate, and received assets to a large amount, but refused to pay any portion of them to A. A bill filed by A. to compel such payment having been demurred to on the ground that the marriage between P. and A. was void, *held*, that the decree of divorce was an absolute dissolution of the marriage contract as to both parties.

3. The disability to marry imposed by the statute of New York attached to P., by way of penalty, only within that state.

[Cited in Phillips v. Madrid, 83 Me. 207, 22 Atl. 114.]

4. The marriage between A. and P. in New Jersey was valid.

[Cited in Van Voorhis v. Brintnall. 86 N. Y. 27.]

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

5. A. was entitled to all the rights of the lawful widow of P. under the laws of New York.

[Cited in Com. v. Lane, 113 Mass. 465.]

6. J. was bound to pay over to her her share of P.'s estate.

7. Semble, that the validity of the New Jersey marriage would not have been affected if both parties had resorted to that state to evade the prohibitory law of New Jersey. And clearly, where one party was innocent and ignorant of such purpose, the mala fides of the other could not impeach the marriage, if it was lawful in other respects.

In equity. The plaintiff in this case [Amanda L. Ponsford] a citizen of New Jersey, filed her bill against William Johnson and others, citizens of New York. She claimed to be the widow of James Ponsford, deceased, the defendant Johnson was his administrator, and the other defendants were his next of kin. The facts were these: Some time prior to 1826, James Ponsford was married in New York to one Hannah Stanton, who, in that year, obtained from the court of chancery of the state of New York a decree of divorce on account of the adultery of Ponsford. He appeared in the suit brought by her, and the court had full jurisdiction, both of the subject-matter and of the parties. The decree of divorce was, that the marriage between the parties "be and the same is hereby dissolved, and that each of the said parties be freed from the obligations of the same, according to the provisions of the act of the legislature of the state of New York in such case made and provided." The act under which the divorce was decreed was entitled. "An act concerning divorces and for other purposes," passed April 13th, 1813. The fourth section of the act was the only one particularly involved, and was as follows: "If it shall satisfactorily appear to the court of chancery that the defendant has been guilty of the adultery charged in the bill, it shall be lawful for the said court to decree that the marriage between the parties shall be dissolved, and each party freed from the obligations thereof, but such dissolution shall not in any wise affect the legitimacy of the children thereof. And it shall be lawful for the complainant, after such dissolution of the marriage, to marry again, as though the defendant was actually dead. But it shall not be lawful for the defendant, who may be so convicted of adultery, to marry again until the complainant shall be actually dead." 2 Rev. Laws, 198, § 4. In September, 1837, the plaintiff and James Ponsford were married to each other, both then residing in New York. The marriage, however, took place in due form in New Jersey, in conformity to the laws of that state. From the time of this marriage until the death of Ponsford, he and the plaintiff lived together as husband and wife. The plaintiff, at the time of the marriage, knew nothing of said decree of divorce, or of the suit in which it was obtained. She had heard that Ponsford had been married, but was informed by him, prior to her marriage, that his former wife had been dead for many years. When Ponsford proposed to the plaintiff to go to New Jersey to be married, he assigned to her as a reason that he did not wish his friends to know of his marriage, and she was married in New Jersey in compliance with his wishes, and not with any intention on her part of evading or defeating any of the laws of New York. The plaintiff, at the time of her own marriage, was not acquainted with Hannah Ponsford or her family, or with James Ponsford's family, and heard nothing of Hannah or of her said marriage (except as before stated) until some time after her own marriage. Hannah was still living when this bill was filed. James Ponsford died in June, 1845, intestate, leaving no descendant or parent, but leaving the plaintiff, his widow, and a sister, and nephews and nieces, children of deceased brothers and sisters, as his next of kin. In July, 1845, the defendant Johnson, who was the husband of one of the nieces, obtained letters of administration on Ponsford's estate from the surrogate of the city of New York, where Ponsford left property, and received assets to the amount of over $32,000. By the laws of New York, where Ponsford was domiciled at the time of his death, the plaintiff, as his widow, would be entitled to one-half of his personal estate after the payment of his debts, to the whole of the residue if under $2,000, and, if the residue exceeded $2,000, then to $2,000 in addition to the one-half. The bill averred that Johnson would not pay the plaintiff any portion of the estate of Ponsford, but was about to pay it to the next of kin, and refused to recognize the plaintiff as the widow of Ponsford, pretending that she was never lawfully married to him, and that they could not and did not make a lawful contract of marriage in New Jersey. The bill prayed an account by Johnson, the payment to the plaintiff of her share of the estate, and an injunction.

The defendants demurred to the bill, assigning for cause that the plaintiff founded her claim on a pretended marriage between her and Ponsford, contracted while his wife Hannah was in full life, and while Ponsford had no capacity, by the laws of New York, where he was then domiciled and resident, to contract any such marriage during the life of Hannah.

Royal H. Waller, for defendants.

(1) The dissolution of the marriage of Ponsford, by the decree of divorce under the statute of New York, was not operative as to him. His subsequent marriage with the plaintiff was, therefore, void. (2) The marriage domicil in this case was not New Jersey, where the marriage ceremony was performed, but New York, where the parties intended to reside. The contract of marriage was, in the eye of the law, made in New York. (3) But, if made in New Jersey, it was a nullity, having been made in fraud and evasion of the law of New York. Story, Confl. Laws, §§ 86, 123; Jackson v. Jackson,

1 Johns. 424; Inhabitants of West Cambridge v. Inhabitants of Lexington, 1 Pick. 506. (4) The plaintiff makes her claim in this case under the New York statute of distributions, 2 Rev. St. 96, § 75, subd. 3. The question of the distribution, and consequently the question whether she is the widow of Ponsford, must be governed by the local law of New York. Story. Confl. Laws, §§ 380, 481, 482a. She cannot claim in violation of the marriage laws of the place of distribution. Haydon v. Gould, 1 Salk. 119; Hubb. Succ. 309, 310; Story, Confl. Laws, §§ 18, 51, 54, 65; Doe v. Vardill, 5 Barn. & C. 438. 9 Bligh, N. R. 32; Shelf. Mar. & Div. 126, 128.

William Bliss, for plaintiff.

The divorce was an entire dissolution and extinction of the former marriage, as to both parties. The restriction imposed by the statute on Ponsford against his marrying again until Hannah should be actually dead, created a mere personal disability. The statute was designed to act on a second marriage by a defendant convicted of adultery, only when such marriage should be contracted in New York. The fourth section of the act concerning divorces, construed in connection with the act of February 7, 1788 (1 Rev. Laws, 113), could operate on such second marriage only by way of punishment of the defendant, if he should enter into it. Being thus a penal statute, it only prohibited the re-marriage if it took place in New York.

George Wood, on the same side.

Is the plaintiff's marriage to be regarded in New York as a valid marriage? For, if not, she cannot claim as the widow of Ponsford. (1) The validity of the marriage is to be determined by the law of the place where it was contracted. Hubb. Succ. 330, 331; Dalrymple v. Dalrymple, 1 Hagg. Consist. 59. (2) Ponsford was entirely divorced by the decree from his former marriage. The decree and the statute (section 4) both of them declare the divorce to be perfect and entire. The same statute (2 Rev. Laws, 199, § 7) gives to the husband, where he is complainant and obtains a divorce for the adultery of his wife, the same rights in the wife's real and personal property "in like manner as though the marriage had continued," thus implying that the marriage is dissolved by a decree of divorce for adultery. The only cases where the lex loci contractus has not seemed to prevail on the question of the validity of a second marriage after a divorce, is where the first marriage was not completely dissolved by the divorce. Shel. Mar. & Div. 128; Conway v. Beazley, 3 Hagg. Ecc. 639. Marriage is a social relation, governed in part by the principles which govern contracts merely civil, but yet going further, and calling in other principles to regulate and determine its character. In this aspect, the law of marriage is a branch of the jus gentium.

The present case must be considered by the rules of that law.

The objections to the validity of the plaintiff's marriage are: (1) That the parties were bound to marry according to the law of New York; (2) that the personal disability on Ponsford followed him into New Jersey. (1) The lex loci actus governs as to the validity of the marriage. Story, Confl. Laws, §§ 79, 81, 82, 86, 87, 89; Shelf. Mar. & Div. 123; Hubb. Succ. 330, 331, and authorities there collected. To this rule the only exception is, where the marriage violates principles of natural morality. Id. 332, 333. The American doctrine is, that if a person, divorced from his first wife, is rendered by the law of the place of the divorce incapable of contracting a second marriage, still, if he contracts marriage in another state, where the same disability does not exist, the marriage is valid; and this, although the marriage was celebrated in a foreign state in order to evade the law of the place of domicil. Story, Confl. Laws, §§ 89, 123, 123a, 123b; 2 Kent, Comm. (3d Ed.) 91–93; Id. 458, 459; Putnam v. Putnam, 8 Pick. 433; Inhabitants of West Cambridge v. Inhabitants of Lexington, 1 Pick. 506; Decouche v. Savetier, 3 Johns. Ch. 190. If, however, the evasion can in any event affect the validity of the marriage, both parties must concur in the evasion. The evasion, if the cause of the invalidity, must be determined by inquiring into the motives of the parties. It is not an intrinsic but an extrinsic cause. In this case, the plaintiff did not concur in the evasion. (2) The personal disability of Ponsford did not prevent his marrying in New Jersey. It was a mere personal disability. If a penalty, the penal laws of one country cannot be taken notice of in another. They are strictly local. Thus, a criminal sentence of attainder in the courts of one sovereign, although it creates a personal disability to sue there, does not carry the same disability with the person into other countries; and a person convicted of an infamous offence in one state is not thereby rendered incompetent as a witness in other states. Story, Confl. Laws, §§ 620, 621.

Daniel Lord, for defendants, in reply.

The question involved in this case is one not covered by any decision in the United States, except the case of Putnam v. Putnam, 8 Pick. 433, cited for the plaintiff, which is of no weight. If the doctrine of that case be sound, a man may have an unlimited number of wives. (1) Ponsford's first marriage was lawful and created an incapacity in him to marry again while it continued. The divorce under the New York statute (2 Rev. Laws, 198, § 4) did not relieve Ponsford from this incapacity. The marriage was not dissolved for all purposes. It was only dissolved so far as Hannah was concerned, and the statute expressly empowered her to marry again, which she could not otherwise have done. The decree of divorce released the

civil obligations of the parties to the first marriage, but it only released the civil incapacity of Hannah. The policy of the statute was to extinguish the force of the first marriage only as to the aggrieved party. The statute (section 4) imposed no disability on Ponsford, but merely left him where it found him, laboring under the disability created by his first marriage. In this view, the provision was not penal. The second marriage took place while the following provision of the Revised Statutes of New York was in force: "No second or other subsequent marriage shall be contracted by any person during the lifetime of any formei husband or wife of such person, unless the marriage with such former husband or wife shall have been annulled or dissolved for some cause other than the adultery of such person. Every marriage contracted in violation of the provisions of this section shall be absolutely void." 2 Rev. St. 139, § 5. This provision is not limited to the state of New York. The language is positive and universal, and applies to all marriages, wherever contracted. (2) The plaintiff cannot set up a claim under the New York statute of distributions, and at the same time set up a right under the decree of divorce in this case as the foundation of that claim. The evasion of the law of New York by the husband was direct and intentional, and the marriage was as much a violation by both the parties of the policy of that law as if the contract had been made in New York. The lex loci actus is invoked as governing in the case. But the plaintiff's right to her distributive share, as the widow of Ponsford, is the creation of positive law, and is not in the nature of a contract. That right accrues to her, if at all, merely as an incident of her marriage. And, if the marriage was void, of course no incident could follow from it. The plaintiff is claiming rights that follow from a New York domicil, against the law of that domicil. In Haydon v. Gould, 1 Salk. 119 (cited in Hubb. Succ. 309), it was decided, that where the husband demanded a right to himself as husband under the ecclesiastical law, he ought to prove himself a husband by that law.

BETTS, District Judge. This case has been carefully considered by the court, and we are prepared to pronounce judgment in it. The urgency of other engagements since the argument has not allowed us time to draw up at length the reasons in support of the decision. The court is about to adjourn, and the judges cannot have opportunity for further conference previous to November; and, if we defer the decision to that period, a year's delay to the parties may be caused, should an appeal be taken. We shall therefore order judgment to be entered for the plaintiff on the demurrer, only indicating the general grounds upon which the decision is placed.

1. We consider that, as a general principle,

the capacity or incapacity to marry depends on the law of the place where the marriage is contracted, and not on that of the domicil of the parties. This principle need not be asserted as absolute in all cases. Incest, polygamy, and practices outraging the moral sense and the usages of civilized nations, may be excepted from the rule, without impairing its justness and efficacy.

2. We regard the decree of divorce pronounced by the court of chancery of the state of New York to be, in its purport and by force of the statute of the state, an absolute dissolution of the marriage contract as to both parties, and that the disqualification or disability to marry declared by the statute, attached to Ponsford, by way of penalty, only within the state of New York, and did not incapacitate him from contracting a sound and valid marriage in the state of New Jersey, where the same disability did not exist.

3. We think that the validity of the marriage in New Jersey would not have been affected if both parties had resorted there to evade the prohibitory law of New York. And clearly, where one party was innocent and ignorant of such purpose, the mala fides of the other could not impeach the marriage, if it was lawful in all other respects. Judgment for the plaintiff.