Bennett and wife vs. Child et al.

19 362
75 506
19 362
99 394

19 362
116 ¹ 63
116 ² 64

# BENNETT and wife VS. CHILD and others.

Under R. S., ch. 83, sec. 45, lands granted to husband and wife are held by them as at the common law; and sec. 3, ch. 95 does not apply to them.

The husband has entire control of such lands during his life, and may convey or mortgage them for that period, but cannot alienate them so as to give title after his death, if the wife survive.

The husband's interest, or at least his life estate, in such lands is subject to sale on execution for his debt.

Whether, in case the land was purchased wholly with the money of the husband, or in case the husband should survive the wife, the purchaser would acquire by such sale a larger estate, it was not necessary in this case to decide.

The sheriff's certificate of the sale of land on execution will not be wholly annulled, and the issue of any deed thereon restrained, at the suit of the judgment debtor, on the ground that a *part* of the premises are adjudged to have been exempt as homestead; but the purchaser may, if he chooses, have a deed for the remainder.

A judgment in favor of "C. G. & Co." cannot be impeached collaterally on the ground that no such party is known to the law. The objection should have been taken in the action in which such judgment was rendered, and *before* its rendition.

APPEAL from the Circuit Court for *Rock* County.

Action by *John G. Bennett* and *Almira*, his wife, to restrain the sheriff from deeding a certain 80 acre tract of land to the other defendants, constituting the firm of Child, Gould & Co., who had purchased the land at a sale on execution against the plaintiff *John G. Bennett;* and to set aside the sale. The court found the facts substantially as follows: That on the 1st of May, 1854, plaintiffs, as husband and wife, purchased the premises jointly, and took a deed running to them both, and entered jointly into possession, and continued jointly to occupy the premises as a homestead until that time; that nearly one-half of the purchase money was paid out of the separate estate of said *Almira*; that the premises were sold by the sheriff, May 23d, 1860, to Child, Gould & Co., on an execution in their favor against *John G. Bennett*, for a debt contracted subsequently to such joint purchase and occupancy; and that previous to the sale plaintiff duly notified the sheriff of the condition of the title to said premises. Upon these facts the

court held that the plaintiffs owned the premises as tenants by the entirety; that the same were not chargeable with *John G. Bennett's* debt to Child, Gould & Co.; that the plaintiffs were entitled to a homestead in the premises exempt from execution; and that they were entitled to judgment setting aside the sale, annulling the certificate and restraining further proceedings thereon.

The defendants excepted to the findings of fact as to a joint purchase and possession, and the payment of part of the purchase money from the wife's separate estate; but it is not necessary to state the evidence as to those facts. They also excepted to the conclusions of law, and appealed from the judgment rendered in accordance therewith.

*Bennett & Cassoday*, for appellants, argued that by sec. 45, ch. 83, R. S., a grant made to husband and wife does not create a tenancy in common, but the qualities of the estate thus created remain the same as at the common law; that sec. 3, ch. 95 is not applicable to such a grant, because it would create a tenancy in common in direct violation of said sec. 45; and that the husband's rights as to the land so granted are the same during coverture as they are by the common law in the whole of the wife's real property.

"During the life of the husband, he has the absolute control of the wife's estate, and can convey or mortgage it for that period. By the marriage he acquires during coverture the usufruct of all her real estate which she has in fee simple, fee tail or for life. She can only claim the estate on his death." *Barber v. Harris*, 15 Wend., 617–18; *Jackson v. McConnell*, 19 id., 180; 2 Kent's Comm. (8th ed.), 109–114; 1 Washb. on R. P., 424–5; *Litchfield v. Cudworth*, 15 Pick., 28, 29; *Schermerhon v. Miller*, 2 Cow., 459; *Torrey v. Torrey*, 14 N. Y., 432; *Stoebler v. Knerr*, 5 Watts, 182–3; *Brown v. Gale*, 5 N. H., 416; *Butterfield v. Beall*, 3 Ind., 206–7; *Shaw v. Hearsey*, 5 Mass., 521; *Varnum v. Abbot*, 12 id., 479; *Jackson v. Stevens*, 16 Johns., 116.

*Chas. G. Williams*, for respondent:

Section 3, ch. 95, and sec. 45, ch. 83, R. S., were both in force at the time plaintiffs took the conveyance of the land in question. Can these statutes be so construed as to stand together? Admit that by ch. 83, as at common law, *John G. Bennett* was, *jure uxoris*, seized of a freehold estate of his wife's land, and entitled to take the rents, issues and profits thereof; yet was not this very thing sought to be remedied by ch. 95? By this chapter, 1. A married woman can receive and hold real and personal property to her sole and separate use. 2. She can convey and devise real and personal property, including the rents, issues and profits of the same, as a *feme sole*. 3. The husband has no control over or power to dispose of her property, real or personal. 4. The same is not liable for his debts. *White v. Wager*, 32 Barb., 251. *Mrs. Bennett* being clothed with these powers, she and her husband stood as equals before the provisions of ch. 95. When they received the deed of this land it affected them alike. It vested the title in both. He could not sell the land, or any interest therein, without her consent; and if he survived her, he took the whole; *vice versa*, she could not sell without his consent, and if she survived him she took the whole. Here the restrictions of ch. 95 ceased. It was confined to the *title* and the *possession*. *John G. Bennett*, together with his wife, had a right to the possession of the land, and he had a right to dispose of his share of the rents, issues and profits, and so had *Mrs. Bennett* of hers, or else the provisions of ch. 83 are a nullity as to her. These statutes should be construed as one act; and thus construed, it is impossible to give them any other force or effect.

*By the Court*, DOWNER, J. The first question presented for consideration in this case is, can the creditors of Bennett seize and sell on execution against him land conveyed to him and his wife? This court held in *Ketchum v. Walsworth*, 5 Wis., 95, that where an estate is granted to husband and wife they

take by entireties, and not by moieties; and that the husband could not alienate or incumber the estate so as to prevent the wife, after his death, from taking the whole as survivor. It is said by the learned judge who delivered the opinion in that case, that "there can be no partition during coverture, for this would imply a separate interest in each; and for the same reason neither can alien without the consent of the other any portion or interest therein." We are inclined to think this last remark is not entirely correct. All the authorities agree that the husband during coverture cannot alienate the whole or any part of the estate, so as to give title after his death, as against the wife surviving him. But we do not understand that at common law he could not convey his life interest or estate therein. In the case of *Barber v. Harris*, 15 Wend., 615, the court say of such an estate: "During the life of the husband he undoubtedly has the absolute control of the estate of the wife, and can convey or mortgage it for that period. By marriage he acquires, during coverture, the *usufruct* of all her real estate which she has in fee simple, fee tail, or for life." If the husband can convey or mortgage the land, and give to his grantee the use of the entire real estate during his life, we see no good reason why his creditors cannot seize it on execution; for it is clear that under our laws a life estate is subject to be seized and sold on execution. If this interest of the husband is not subject to execution, then he has the right to use, sell, convey, or mortgage real estate of great value over and above his homestead, which his creditors cannot reach.

In the case of *Jackson v. McConnell*, 19 Wend., 178, COWEN, J., says of such an estate: "The husband's creditors cannot take his interest in execution." He cites to this point *Rogers v. Grider*, 1 Dana, 242, and *Roanes v. Archer*, 4 Leigh, 550. We have carefully examined these cases, and it appears to us that they entirely fail to sustain the position. We are of opinion that lands granted or conveyed to husband and wife are held by them as at common law. R. S., ch. 83, sec. 45. It

is clear to us that section 3, ch. 95, was not intended to apply to estates of this kind. We must therefore hold that the husband's interest, at least his life estate, is subject to execution, except such part as may be exempt as a homestead.

Eighty acres were sold under the execution; forty of it is claimed as a homestead. What would be the effect upon the sale if this claim is established? Should the sheriffs's certificate be set aside entirely, or the purchasers be ordered to release the homestead from the sale, and be permitted if they choose to take a deed of that part of the premises thus released? If eighty acres had been sold on the execution, and the defendant therein had title to only one half thereof, the purchaser (in case he purchase believing the title to the whole good in the execution defendant, and applied to the court without unreasonable delay) might have had the sale vacated; or, if he preferred, he could take a sheriff's deed which would give him title to only one half of what he purchased. We see no reason why the purchasers at the execution sale in this case might not, even if the respondents should prevail as to the homestead, if they so elected, receive a deed of the part not so exempt. It is for the purchasers, not the defendant in the execution, to say whether the sale shall be vacated, in case the purchasers could acquire no title to a part of the land sold. It may be that the part to which they get title is worth all they pay. The complaint was evidently not framed with a view to relief on the ground of the homestead exemption; and if the right of such exemption is to be litigated, the complaint should be amended. We therefore do not pass upon that question. We hold that the execution sale was not void or voidable at the suit of the plaintiffs as to the land not exempt as a homestead; that the land, or so much of it as was not exempt as a homestead, was subject to execution; and that the purchasers at the execution sale acquired such title to the premises not so exempt, as would give them the use of them during the life of the husband. If the land was purchased entirely with the

money of the husband, or if he should survive the wife, the purchasers might perhaps acquire a larger estate. It is not necessary for us now to decide whether they would or not.

The position that "Childs, Gould & Co." is not a party known to the law, and that the judgment in their favor is void, is untenable. If the defendant in that suit desired to take advantage of that defect or irregularity, he should have appeared before the justice and made his objection before judgment.

The judgment of the circuit court is reversed, with costs, and the cause remanded for further proceedings.