FRISK and others, Respondents, vs. REIGELMAN, Garnishee,
Appellant.

*November 7, 1889 — January 28, 1890.*

*(1, 3, 6) Debtor and creditor: Fraudulent conveyance: Garnishment:*
*Judgment: Invalid attachment. (2) Appeal: Immaterial errors.*
*(5) Action in firm name: Amendment. (4, 7–11) Publication of*
*summons: Verification of complaint by attorney: Proof of publi-*
*cation: Variance in name of newspaper: Filing corrected affi-*
*davit: Residence of defendant.*

1. The evidence in this case — showing, among other things, that the
   garnishee purchased a stock of goods from the defendant without
   having seen them or any invoice of them, and without making
   any inquiries, except of the defendant, whom he had known but
   a short time, as to the quantity and value of the goods; that he had
   admitted that they were a bankrupt stock which he had purchased

| 75 | 499 |
|----|-----|
| 75 | 215 |
| 75 | 499 |
| 79 | 443 |
| 75 | 499 |
| 98 | 66 |

| 75 | 499 |
|-----|------|
| 115 | 2405 |

at twenty cents on the dollar; and that he commenced to sell them at about one third of their value,— is *held* to sustain a finding that the sale was fraudulent to the knowledge of the garnishee, and that he was liable to the creditors of the defendant for the value of the goods.

2. In a case tried without a jury the judgment will not be reversed for the admission of incompetent testimony, nor for the exclusion of competent testimony which could not have changed the result.

3. A valid judgment against the defendant in the principal action is essential to the validity of the judgment against a garnishee, and the latter may be heard to assert the invalidity of the principal judgment.

4. Where the summons was not personally served it is essential to the validity of a judgment against the defendant that there should have been due publication of the summons under a valid order therefor made after the filing of a verified complaint.

5. Though the principal action was brought and prosecuted by partners in the firm name, the judgment therein is not void, and before judgment in the garnishee action the proceedings may be amended by inserting the names of the partners as plaintiffs.

6. A valid attachment not being essential to the maintenance of an action upon a demand past due, the invalidity of an attachment therein does not affect a judgment against a garnishee.

7. Verification by an attorney, to the effect that he has read the complaint and knows the contents thereof, and verily believes the same to be true; that the sources of his information, which are the grounds of his belief, are derived from statements of the plaintiffs' account, and letters in reference thereto, received by him from the plaintiffs; and that the reason the complaint is not verified by one of the plaintiffs is that none of them are now within the county of E., in which county the deponent resides,— is *held* sufficient.

8. An affidavit of the publication of a summons in " *The Eau Claire Daily Leader*, a daily newspaper printed and published at the city of Eau Claire," etc., shows a compliance with an order directing publication in the " *Daily Leader*, a newspaper published in the city of Eau Claire," etc.

9. Proof of the publication of a summons "six weeks successively, commencing," etc., does not show compliance with a statute requiring the publication to be made "not less than once a week for six weeks."

10. A motion in this court for leave to file a corrected affidavit of publication of the summons is granted with directions to file such affidavit in the trial court, to be transmitted to this court.

11. An affidavit for an order for publication of the summons, stating that up to about the time the action was brought the defendant was a resident of the state, that about that time he departed from the state with intent to defraud his creditors or to avoid the service of a summons upon him, and that the plaintiffs are unable to ascertain either the post office address or residence of said defendant, sufficiently shows that the defendant was a resident of the state when the affidavit was made, under subd. 2, sec. 2639, R. S.

APPEAL from the Circuit Court for *Eau Claire* County.

The principal action is upon an account for goods sold and delivered by the plaintiffs to the defendant, Bessinger, amounting to $170.25. The summons was issued December 19, 1887, and was afterwards returned by the sheriff not served, the defendant not being found in his county. With the summons a writ of attachment was issued, by virtue of which the sheriff levied upon a stock of merchandise as the property of Bessinger, subject to another attachment issued in an action brought by Streissguth & Drake against Bessinger, and theretofore levied upon the same goods. On the same day *Samuel Reigelman* was duly summoned as a garnishee. He subsequently answered, denying liability as a garnishee, and the plaintiffs took issue on his answer.

On the complaint filed in the action, verified by Mr. Frawley, the attorney for the plaintiffs, and on the affidavit of Mr. Frawley, showing that Bessinger had recently theretofore departed from the state with intent to defraud his creditors and to avoid the service of a summons upon him, the plaintiffs obtained from a court commissioner an order for the service of the summons by publication. After the time for such publication to be made had fully elapsed, the plaintiffs obtained judgment by default against Bessinger for the amount of their claim.

After the entry of such judgment the garnishee action was brought to trial. By a stipulation entered into by the respective attorneys a jury was waived and the cause was submitted to the court on the testimony taken in the action

of Streissguth & Drake, above mentioned, who had also instituted garnishee proceedings against *Reigelman.* An issue had also been made therein on the answer of the garnishee, which was determined by a jury in favor of those plaintiffs.

The court found, in substance, that when the garnishee summons was served *Reigelman* had in his possession and under his control personal property belonging to Bessinger of the value of at least $1,200, and that sufficient remains in his hands, after deducting from the value thereof the amount of the judgment against him of Streissguth & Drake, to pay the judgment of these plaintiffs against Bessinger. Judgment was thereupon ordered and entered for the plaintiffs against *Reigelman* for the amount of their judgment against Bessinger. A motion for a new trial was denied. The garnishee, *Reigelman,* appeals from the judgment.

*James Wickham,* for the appellant, to the point that the complaint was not properly verified, cited R. S. sec. 2666; *Gillet v. Houghton,* 8 Wis. 311; *Clute v. Hazleton,* 51 Iowa, 335; *Boston L. Works v. Wright,* 15 How. Pr. 253; *Hecht v. Friesleben,* 28 S. C. 181.

*T. F. Frawley,* for the respondents.

The following opinion was filed December 3, 1889:

LYON, J. I. Numerous questions of practice are presented by this appeal and were argued by counsel. These will be considered hereafter. It is convenient, first, to consider the case on the merits.

The *gravamen* of the garnishee action is that *Reigelman,* the garnishee, purchased a stock of goods of Bessinger, the principal defendant, with the intent on the part of both of them to hinder, delay, and defraud the creditors of Bessinger. The personal property mentioned in the findings of the court is part and parcel of such stock of goods. As is

usual in cases of this character, the testimony on most of the material questions involved is conflicting and irreconcilable. After a careful examination thereof, we are of the opinion that the court might properly have found therefrom the following specific facts:

In the year 1887, Bessinger was engaged in mercantile business at Washburn. As late as the 1st of December he had a stock of goods in his store worth between $3,000 and $4,000. Soon thereafter he removed a portion of his stock, of the value of about $1,200, to Hayward, and a portion to Ashland. He sold at Hayward about $300 worth of the goods taken there, and sent the remainder to Eau Claire, directed and consigned to *Reigelman*. He then went to Eau Claire, and negotiated a sale of the portions of his stock both there and at Ashland to *Reigelman* for $1,000. The latter made the purchase without opening the packages containing the goods at Eau Claire, or making any examination of them, and without having seen the goods at Ashland or any invoice of them, and without making any inquiries, except of Bessinger, as to the quantity and value of the goods. He admitted to one of the witnesses that the goods seized on the attachments were a bankrupt stock which he had purchased at Ashland; that the stock was worth $3,000, and he had purchased it at twenty cents on the dollar of its value. Upon inquiry being made of him, he disclaimed knowledge of the whereabouts of Bessinger, but said he had heard he was in San Francisco. After such purchase, *Reigelman* furnished Bessinger transportation to St. Paul, and has not seen him since.

*Reigelman* placed the goods in a room adjoining his saloon, and commenced selling them at one third or less of their actual value. The only testimony of the consideration paid for the goods by *Reigelman* was given by himself, and is to the effect that he loaned Bessinger $500 in March, 1887, taking no note or other voucher therefor. He gave

him the money, or most of it, in currency. In July he sent a note for the amount to Bessinger, to be executed by him, payable in four months, that is, on November 25, 1887, without interest. It is quite apparent that Bessinger was an entire stranger to him before 1886, and his personal intercourse with him after that time was casual and infrequent. He testifies to purchasing large quantities of cigars of Bessinger in 1887, and paying him therefor, except 1,000, which he received as interest on the $500. His testimony as to his dealings with Bessinger is so vague and confused that it is quite insufficient to show any close business or personal relations between them. He further testifies that when he bought the goods he surrendered to Bessinger the $500 note, and indorsed to him a certificate of deposit for $500, dated two days before, in payment thereof. The certificate so indorsed was produced in court.

Without going further into detail, it is sufficient to say that the transactions between *Reigelman* and Bessinger were so unusual — so out of the ordinary course of business — that, taken in connection with his admission that the stock which he purchased was a bankrupt stock and was so purchased at a ruinous sacrifice, the learned circuit judge was abundantly justified in finding the sale was in fraud of the creditors of Bessinger, to the knowledge of *Reigelman*, and that the goods thus purchased by the latter remained, as to such creditors, the property of Bessinger, and that . *Reigelman* was liable to them for the value thereof. The testimony also fully supports the finding that the stock thus fraudulently purchased by *Reigelman* was worth at least $1,200.

The fact that the certificate of deposit was indorsed to Bessinger is not very significant. In most cases of fraudulent sales we find evidence of the formal payment of a consideration, and often the payment is made with considerable publicity and ostentation. Of course, the payment of

a consideration by the purchaser is a fact to be considered in determining the question of fraud, but it is by no means a controlling one. If it were, but few fraudulent sales could be successfully impeached, for they would be so made that the purchaser could easily prove that he paid for the property.

Many exceptions were taken on the trial to the rulings of the court admitting or rejecting testimony. It is no sufficient ground for reversing the judgment, where the case is tried without a jury, that incompetent testimony has been admitted. In such case, the appellate court will give no weight to such testimony in the determination of the appeal, but will not reverse the judgment because it was admitted. We are satisfied that, had all of the testimony rejected by the court been received, it could not have changed the result. Hence the rulings in that behalf are immaterial.

We conclude that the testimony supports the findings and judgment.

II. We are now to determine certain alleged errors and irregularities of practice in the proceedings preliminary to the judgment in the principal action, which, it is claimed, invalidate the garnishee proceeding and judgment. Before doing so, however, it should be observed that a valid judgment in the principal action against the defendant, Bessinger, is essential to the validity of the judgment against the garnishee, and the latter may be heard to assert the invalidity of the principal judgment. *Streissguth v. Reigelman, ante,* p. 212 (decided herewith), and cases there cited.

Further, the summons not having been personally served on Bessinger, it is essential to the validity of the judgment against him that there was a valid order for publication of the summons, and due publication thereof, and that no such order could be regularly made until a verified complaint in the action had been filed.

We proceed to the consideration of the alleged errors and irregularities above mentioned.

1. The principal action was commenced in the name of "Frisk, Turner & Co.," and all the papers therein, and in the garnishee action down to the trial of the latter action, were thus entitled. Before judgment in the garnishee action, the court made an order amending the proceedings by inserting, in place of the firm name, the names of the partners therein, as plaintiffs. Bringing the action in the firm name does not render the judgment void, but is a mere defect or irregularity, which is waived unless due objection be made thereto before judgment. *Bennett v. Child*, 19 Wis. 362. No such objection was here interposed. The amendment was properly allowed.

2. The affidavit upon which the writ of attachment issued in the principal action must depend for its validity, is substantially the same as that in *Streissguth v. Reigelman*, *ante*, p. 212. The affidavit in that case was held insufficient, because the indebtedness of Bessinger was not positively stated therein. That action was brought under ch. 233, Laws of 1880 (2 S. & B. Ann. Stats. 1578), upon a debt not then due, and it was held that a valid attachment was essential to the maintenance of the action. Hence the judgment in the principal action was held void.

This action was brought upon a demand past due, and the right to maintain it, or to maintain a garnishee action based upon it, does not depend upon the validity of the attachment. A valid judgment in the principal action could have been rendered, and a valid garnishee proceeding could have been instituted therein and prosecuted to judgment, had no attachment been issued or attempted to be issued. The issuing of a summons is a sufficient basis for the garnishee proceeding. Sec. 2753, R. S. Hence the invalidity of the attachment herein does not affect the judgment against the garnishee. It removes from the case, however,

the question whether, after the plaintiffs attached the goods fraudulently purchased by *Reigelman*, they can maintain a garnishee proceeding against him to recover the value of such goods.

3. It is contended by counsel for the garnishee that the complaint is not properly verified, and hence the order of publication was unauthorized. The verification was made by Mr. Frawley, the attorney for the plaintiffs, who resides in Eau Claire county. It is to the effect that he is such attorney and makes the verification in their behalf; that he has read the complaint and knows the contents thereof, and verily believes the same to be true; that the sources of his information, which are the grounds of his belief, were derived from statements of the plaintiffs' account, and letters in reference thereto, received by him from the plaintiffs; and that the reason the complaint is not verified by one of the plaintiffs is that none of them were then within the county of Eau Claire, in which county he resides. On the authority of *Morley v. Guild*, 13 Wis. 576, this verification must be held sufficient. The discussion of the subject in that case by Chief Justice Dixon is full and satisfactory, and we do not care to add anything to what is there said.

4. The order of publication directed that the summons be published in the "Daily Leader, a newspaper published in the city of Eau Claire, county of Eau Claire," etc. The affidavit of publication is that the summons was published in "The Eau Claire Daily Leader, a daily newspaper printed and published at the city of Eau Claire, in said county of Eau Claire." It is claimed that the affidavit fails to show a publication in the newspaper specified in the order. We think otherwise. If there is any substantial difference between the order and affidavit of publication as to the designation of the newspaper in which the summons was ordered to be and was published, we have failed to discover it.

5. There is, however, a substantial defect in the affidavit of publication, which, if not corrected, would be fatal to the garnishee judgment.    The statute (sec. 2640, R. S.) requires the publication to be made " not less than once a week for six weeks."    The affidavit of publication states that the same was printed and published in such newspaper " six weeks successively, commencing," etc.    That this is not a compliance with the statute is freely conceded by counsel for the plaintiffs.

A motion on behalf of the plaintiffs was submitted at the argument for leave to file a corrected affidavit of publication, and it was shown that the summons was in fact published once a week for six weeks, as required by the order and the statute.    The motion must be granted, and the plaintiffs have leave to supply such defect.    But it should be supplied in the first instance in the court in which the action was brought and the judgment entered, so that the records of that court may show regular procedure in the action.

A corrected affidavit of publication may therefore be filed with the clerk of the circuit court, who is directed to transmit the same to this court to be attached to the record herein.    Until the receipt thereof judgment will not be entered.    It is unnecessary to return the whole record to the circuit court for the purposes of such correction.    Ten dollars costs on above motion is awarded the defendant, to be deducted from the judgment.

*By the Court.*— Judgment affirmed.


The following opinion was filed January 28, 1890:


LYON, J.    The appellant moves for a rehearing of this cause, and alleges in his argument that no mention is made in the former opinion herein of one of the points made by his counsel against the validity of the affidavit for an order

for the publication of the summons in the principal action. The point is that such affidavit shows that the principal debtor, Bessinger, was a nonresident of this state, but fails to show that he had property therein. In other words, it is claimed that the affidavit brings the case within subd. 1, sec. 2639, R. S., and that the requirements of that subdivision have not been complied with.

The only statements on that subject contained in the affidavit are that "the defendant was a resident of the state of Wisconsin up to about the 19th day of December, 1887, and about said time last aforesaid he departed therefrom with intent to defraud his creditors or to avoid the service of a summons upon him," and "said plaintiffs are unable to ascertain either the post office address or residence of said defendant." The summons herein was issued and returned by the sheriff on December 19, 1887. The affidavit in question shows, therefore, that up to about the time the action was brought the principal defendant, Bessinger, was a resident of this state, and at about that time he left the state with the intent and purpose charged. By thus leaving the state he did not cease to be a resident thereof, within the meaning of our statutes concerning the service of process in such cases. He was just as amenable to our laws as though he had concealed himself in the state with like purpose and intent. The statement that the plaintiffs were unable to ascertain the debtor's residence is just as consistent with his having a residence in this state as out of it. We conclude that the affidavit shows sufficiently that Bessinger resided in the state when it was made, although he had recently theretofore departed therefrom with the intent and purpose charged. It is therefore a good affidavit under subd. 2, sec. 2639, and manifestly was drawn under that subdivision, which does not require that the debtor shall have property in the state to authorize an order for service of the summons upon him by publication.

This point was not overlooked in our former considera-
tion of the case, but the statement of facts preceding the
opinion gave the substance of the affidavit for the order of
publication, and it was supposed by the writer that the
mere statement was sufficient to show that Bessinger's actual
residence was not changed by his fraudulent absence from
the state.

*By the Court.*— The motion is denied, with $25 costs.