**KALE v. HUMPHREY et al.**

No. 7178—Opinion Filed Sept. 11, 1917.

Rehearing Denied Jan. 22, 1918.

(170 Pac. 223.)

(Syllabus.)

**1. Justices of the Peace—Property—Equitable Title—Lien—Presumption.**

The evidence for the plaintiff in this case has been examined, and is held intrinsically so deficient in credibility, and also, if assumed to be credible, so deficient in probative reach and effect, that it does not sustain the burden that was upon the plaintiff to show that, at the time in question, she was the equitable owner of the lands to which a certain judgment debtor, in a judgment entered in the court of a justice of the peace, then held the legal title, evidenced by a general warranty deed, duly recorded, in view of the presumption that the equitable title was, with the legal title. in such debtor; and such evidence is insufficient to entitle her to an injunction to prevent the sale of such land under an execution issued against such debtor and levied upon such land to satisfy such judgment; and such evidence is insufficient to require a decree relieving such land from the apparent lien created thereon by the filing of a transcript of such judgment in the proper district court while such judgment debtor held the legal title to such land.

**2. Judgment—Parties—Partnership—Suit—Waiver—Judgment—Collateral Attack.**

The rule that a partnership has not sufficient legal entity to sue in its own name, but must sue in the name of the individuals composing the same, is for the benefit of and may be waived by the party sued; and a judgment in favor of such partnership in its own name only, instead of in its favor as a party suing in the name of the individuals composing the same, is not void nor subject to collateral attack.

(a) Where a partnership sues in its own name, instead of the name of the individuals composing the same, and obtains judgment accordingly, without encountering a plea in abatement or other proper objection by the defendant to its capacity to so sue and obtain judgment in its own name, the judgment is valid and enforceable.

**3. Judgment—Date—Lien—Transcript—Entry of Judgment—Statute.**

The words "judgment rendered 24 Oct., 1898," immediately following the signature of a justice of the peace to a judgment showing no other date, as if intended as an addendum to such judgment, and signed by such justice of the peace as such, will, in the absence of any evidence to the contrary, be regarded as an addendum to such judgment, and as sufficient evidence of its date.

(a) Such judgment was and is not void, but was and is sufficient to authorize a transcript thereof to be filed in the proper district court to create and preserve the lien provided for by section 4413, Stats. 1893, the same being section 4411, Wilson's Statutes (section 5218, Rev. Laws 1910), when such transcript was filed in such court as required by section 4412, Stats. 1893, the same being section 4710, Wilson's Statutes (see section 5217, Rev. Laws 1910.)

(b) The fact that the entry of that case, together with an abstract of that judgment, upon the judgment docket as required by the latter section, together with the fact of entries in such docket showing the issuance of several executions thereon, although not the best evidence, is, when not objected to, sufficient to show that such transcript was filed as of the date of such entry of such case and abstract of such judgment upon such judgment docket, although the same is not shown to have been entered upon the appearance docket as required by such section, and the transcript, if not destroyed in a courthouse fire, which occurred after the date of such entry of such case and abstract of judgment, has been lost or mislaid and has not been substituted.

(c) As against a collateral attack of a third party, an execution issued out of such district court upon such evidence of the filing of such transcript of such judgment is valid, even though such transcript, at such time, has been destroyed by fire, lost or mislaid, and has not been substituted.

(d) The fact that such case and abstract of judgment was entered, as abstracts of all judgments of that district court were then entered, in chronological order, with index in the front of the judgment book, under the title of "Judgment Debtor," and under the first letter of the surname of the defendant, instead of in alphabetical order, etc., does not render such entry void nor render such entry, together with the entries of the issuance of such executions, when admitted in evidence without objection, insufficient evidence of the filing of such transcript upon the date of such entry of such case and abstract.

**4. Execution—Validity — Collateral Attack —Statute.**

An omission to indorse the amount of the judgment and of the costs upon the back of an execution showing the same upon its face does not render the execution void and subject to a collateral attack by a third party under the provisions of section 4338, Stats. 1893 (section 5154, Rev. Laws 1910).

**5. Execution — Praecipe — Validity — Collateral Attack.**

An execution issued upon a judgment, rendered in favor of a partnership only in its partnership name, upon a praecipe signed by one of the two individuals composing such

partnership, who, when such execution was issued, was the sole owner of such judgment, which praecipe erroneously described the judgment as if the record showed it to be in his own favor, but otherwise clearly identified the judgment, is not void nor subject to a collateral attack by a third party.

## 6. Judgment — Dormancy of Judgment — Statute.

An execution is not void nor insufficient to prevent a judgment from becoming dormant under section 4337, Stats. 1893 (section 5153, Rev. Laws 1910), merely because, following its directions to the sheriff, that, for want of "goods and chattels," he "cause the same to be made of the lands and tenements of the said ————," omitting from such blank space the name of the person whose lands and tenements are to be seized, when his name appears in such execution as the judgment debtor and also as the person whose "goods and chattels," if any, are to be seized thereunder.

## 7. Execution — Return — Validity — Indorsement.

An execution bearing a return of the officer to whom it was issued and found among the files of the papers of the case in which it was issued is not void and subject to collateral attack because the fact of its filing is not indorsed thereon.

Error from District Court, Kingfisher County; James B. Cullison, Judge.

Suit in equity by Sylvie E. Kale against Grant Humphrey, Lon Humphrey, as partners in the name of Humphrey Bros., Grant Humphrey, the Grant Humphrey Mercantile Company, a corporation, and Clyde Smith, as sheriff of Kingfisher County, Okla., to enjoin the sale of an undivided one-half of the S. E. ¼ of section 5 in township 15 N., range 8 W. I. M., in Kingfisher county, Okla., under an execution that had been levied upon the same, and under any other execution that might be issued, and to enjoin the issuance of any other execution, upon a judgment in favor of Humphrey Bros., against Chas. W. Kale, and for a decree that the said Sylvie E. Kale is the absolute owner in fee simple of all of said lands, and also of the S. E. ¼ of section 13, township 15 N., range 9 W. I. M., in Kingfisher county, Okla., and also that each and all of the defendants have no right, title, interest, or lien upon the aforesaid lands or any part of the same. Decree for the plaintiff as to said S. E. ¼ of section 13, township 15 N., range 9 W. I. M., and against her as to said undivided one-half of S. E. ¼ of section 5, in township 15 N., range 8 W. I. M., in that the decree was that Humphrey Bros., by virtue of their said judgment, had and have a lien thereon,

that a temporary injunction restraining the payment under said execution be dissolved, and that said Humphrey Bros. shall not be further restrained from proceeding to enforce their judgment against the same. Plaintiff brings error. Affirmed.

F. L. Boynton, for plaintiff in error.

Hinch & Bradley, for defendants in error.

THACKER, J. This is a suit in equity commenced on November 28, 1913, by Sylvie E. Kale against Grant Humphrey and Lou Humphrey, as partners in the name of Humphrey Bros., Grant Humphrey Mercantile Company, a corporation, Grant Humphrey, and Clyde Smith, as sheriff of Kingfisher county, Okla., to enjoin the sale of an undivided one-half of the S. E. ¼ of section 5, in township 15 N., range 8 W. I. M., in Kingfisher county, Okla., under an execution that had been levied upon the same on October 11, 1913, and under any other execution that might be issued, and to enjoin the issuance of any other execution, upon a judgment in a justice of the peace's court in favor of Humphrey Bros. against Chas. W. Kale, and for a further decree that the said Sylvie E. Kale is the absolute owner in fee simple of all of said lands, and also of the S. E. ¼ of section 13, in township 15 N., range 9 W. I. M., in Kingfisher county, Okla., and also that each and all of the defendants have no right, title, interest, or lien upon the aforesaid lands or any part of the same by reason of the filing of a transcript of such judgment in the district court of the county in which the judgment was given.

The trial court make a decree, as prayed, for the plaintiff as to said S. E. ¼, section 13, township 15 N., range 9 W. I. M., but against her as to said undivided one-half of S. E. ¼ of section 5 in township 15 N., range 8 W. I. M., in that the decree as to this tract was that Humphrey Bros., by virtue of their said judgment, had and have a lien thereon, that a temporary injunction restraining the sale under said execution be dissolved, and that said Humphrey Bros. shall not be further restrained from proceeding to enforce their judgment against the same. The plaintiff below alone brings error.

On October 24, 1898, according to a separate entry immediately following the judgment next mentioned, Humphrey Bros., a copartnership, composed of Grant and Lou Humphrey, in their copartnership instead of their individual names, and without disclosing the latter, obtained a judgment before a justice of the peace of Kingfisher county,

Okla., for a debt amounting to $77.78, with interest thereon from that date at the rate of 7 per cent. per annum until paid, together with $13.03 as accrued interest, for an attorney's fee of $5, and for their costs then taxed at $15.80. About the time this judgment was obtained against him, this Chas. W. Kale, who was a farmer, transferred five head of horses on his farm, the same being all the personal property owned by him at that time, to a younger brother, with whom he was then living on said S. E. ¼ of said section 13, township 15 N., range 8 W. I. M. _On August 8, 1900, a transcript of this judgment was filed by Humphrey Bros. in the district court of Kingfisher county; but it appears that same was not entered upon the appearance docket as required by section 4412, Stats. 1893 (section 4710, Wilson's Statutes), the same, with minor amendments, being now section 5217, Rev. Laws 1910, nor upon the judgment docket except in its chronological order with index under the title "Judgment Debtor," and under the first letter of the surname of the judgment debtor, and the transcript has since been destroyed by fire, or, if not, cannot now be found, and has probably been lost. On September 12, 1900, this Chas. W. Kale, the judgment debtor, who was a homestead entryman upon said S. E. ¼ of section 13, township 15 N., range 9 W. I. M., was married to the plaintiff, who then owned a cow and some chickens and ducks; the cow being a present from her husband's said younger brother. On April 18, 1902, this Chas. W. Kale made final proof and obtained a final receiver's receipt showing that he was entitled to a patent to this land, and thereupon, on the same day, conveyed the same for the nominal consideration of $1 to the plaintiff in accord with an antenuptial oral agreement between themselves in disregard of the homestead laws of the United States and without other actual consideration than that of their marriage. On October 12, 1903, an execution was issued out of the district court upon the Humphrey Bros. judgment, and returned showing "No property found."

About two or three years after Charles W. Kale married, his younger brother, hereinbefore mentioned, who had resided with him and the plaintiff during those intervening years, left, and in leaving, left five head of horses, including, as we understand the evidence, three or four head which he then gave the plaintiff, according to the testimony in her behalf, as a manifestation of his appreciation of what he had received from her in the way of board and lodging during that period. On October 12, 1908, another execution was issued out of the district court, and returned showing "No property found." On September 29, 1913, M. K. Chenoweth and F. E. Chenoweth, wife and husband, conveyed to the plaintiff and her husband this Chas. W. Kale, by a general warranty deed, the said S. E. ¼ of section 5, township 15 N., range 8 W. I. M., in consideration of $600 in cash derived from the proceeds of the S. E. ¼ of section 13, township 15 N., range 8 W. I. M., and from the land purchased, which they had been cultivating as tenants, and in consideration of a deferred payment of $2,100, evidenced by the note and mortgage of the plaintiff and this Chas. W. Kale, a portion of which deferred payment has since been paid from the proceeds of the farming operations of Chas. W. Kale and the plaintiff.

The negotiations resulting in this conveyance were carried on through the mails, between F. E. Chenoweth, the husband of M. K. Chenoweth, and Chas. W. Kale, the husband of the plaintiff, but, in this correspondence, Chas. W. Kale, in accord with his custom and the mutual understanding between himself and wife in business transactions in general, concealed or ignored his own identity and personality and wrote in the name of the plaintiff, S. E. Kale. It appears from the testimony of F. E. Chenoweth, a witness for the plaintiff, that on August 16, 1913, and as a part of this correspondence, he wrote, "If you wish me to prepare papers be sure and give full name of wife, also your own way you want name to appear of record;" and, in answer to this request for information, he received a slip of paper on which was written, "C. W. Kale and S. E. Kale, wife." On October 11, 1913, Humphrey Bros. caused an execution upon their judgment against Chas. W. Kale to issue out of the district court, and thereupon levied upon said undivided one-half of S. E. ¼ of section 5, township 15 N., range 8 W. I. M.; and on November 28, 1913, while the sheriff was proceeding to give notice of the sale of the same under such execution, this suit was commenced and a temporary restraining order was issued preventing further proceedings thereunder. On November 15, 1913, just four days after the levy of said execution, this Chas. W. Kale executed to the plaintiff a deed purporting to convey to her said undivided one-half interest in and to said S. E. ¼ of section 5, township 15 N., range 8 W. I. M., reciting therein that he had been named as a grantee in the deed from M. K. Chenoweth and her husband through "misunderstanding and

error," that the plaintiff had paid with her own money the consideration for the conveyance of this land, and that the equitable title to the same had been in her at all times since the said conveyance by M. K. Chenoweth and her husband. The plaintiff afterwards, and while. the instant case was pending, brought a suit in equity against this Chas. W. Kale and against M. K. Chenoweth and her husband in the district court of Kingfisher county to obtain, and on December 16, 1913, without encountering any resistance obtained, a decree reforming the Chenoweth deed so as to show that the plaintiff alone was the grantee therein, besides correcting an error in the description of the land. It may here be observed that, since neither Humphrey Bros. nor their successor in interest was a party to said deed of November 15, 1913, or to said judgment of December 16, 1913, these cannot affect their rights in the instant case.

As the legal title and a presumption of the equitable title also to an undivided one-half of said S. E. ¼ of section 5, township 15 N., range 8 W. I. M., was in Chas. W. Kale on October 11, 1913, when the execution immediately in question was levied upon the same (as well as at all times between September 29, 1913, and November 15, 1913), the burden of proof was upon the plaintiff, as such, to prove by a preponderance of the evidence that the equitable title to the same was not at the time of the levy of this execution in Chas. W. Kale, but in herself, as alleged by her, and, in doing so, to overcome the presumption raised by the Chenoweth deed that the equitable title was, with the legal title, in him.

Her evidence as to this, although possibly sufficient to have supported a finding by the trial court that the equitable title was in herself, was, in the light of human experience in seeking the truth in such evidence as to such matters, of such intrinsic weakness. both as to credibility and as to the inferences to be drawn from the same if true, that this court would not be justified in finding that the trial court erred in rejecting the same as insufficient to overcome the above-mentioned presumption. and to prove that she held the equitable title at the time of the levy of this execution.

In the brief for the plaintiff it is said:

"In 1898 there was a firm doing a mercantile business in Kingfisher named Humphrey Bros., who, in that name without disclosing or suing in the name of the members, sued Chas. W. Kale and recovered before a justice of the peace a default judgment (so called), which we claim was void on its face. In 1900 the plaintiff, Sylvie E. Kale, married Chas. W. Kale, and, as a part of the consideration thereof, Chas. W. Kale, being a 'near' invalid, he agreed with her that the government homestead, on which he was living, should be transferred to her when title was obtained. He proved up and secured final receipt for this land April 18, 1902, and on the same day fulfilled his antenuptial agreement and deeded the land to her. At this time they were. living on this land, and had been since the marriage, and, owing to his ill health, it was rented to his brother, who farmed it, and the plaintiff boarded him, and he paid the board when he left by turning over to her in lieu of money an equivalent in stock on the place, except such as had come from a wedding present of a cow or two at the time they were married, and it was from this live stock of hers, and from this farm of hers, that all they have accumulated, including the moneys with which was purchased the other quarter section of land which is now in controversy.

"During all the time since they were married, for the reasons stated, the plaintiff has been the owner of the property and the business end of the family, though her husband has done the little he could to aid her by his service, consisting only of advice and light work. He has in many things acted as her agent, has counseled her with his advice, though it does not appear to what extent his advice was heeded, but presumably, it had a value. Yet, with it all, she has done the greater part of the business personally, and nothing has been done of consequence that was not done or expressly directed by her.

"The condition of his health required their removal to California, where they remained for two or three years, she renting the place in the interval of their temporary absence therefrom, and during this period of time she has expended, doubtless, far more for his health's sake than the value of his services rendered to her in the other times of their life. It appears that the California trip was very beneficial, and that on his return his health was so far improved as to give him a wider usefulness. It was then that she had him negotiate with the Chenoweths for the purchase of the farm which is the bone of contention herein. All the correspondence, by a singular coincidence, occurred, so far as the physical act of writing of letters was concerned by the two husbands acting as the agents of the two wives, in the names of whom respectively the record titles reposed, but with the difference that F. E. Chenoweth wrote in his own name, and Chas. W. Kale clearly and consistently obscured his personality and carried on the correspondence from the Oklahoma end in the name of his wife, the real party in interest. In no letter did his name appear, though the Chenoweths by addressing their letters 'Dear Sir,' evidently sup-

posed that S. E. Kale was a man. There seemed to have been no personal acquaintance between the parties. Prior to the purchase, S. E. Kale had been for a couple of years a tenant of Chenoweths. After the purchase her character of possession changed to that of owner.

"By a mutual mistake, after S. E. Kale had conducted all the correspondence in her own name, and had directed the making of the deeds to her, they were drawn to them jointly as grantees, and this was not discovered by the grantees, Kales, until they had been recorded, mailed to them, and laid away and brought forth when the Kales, astounded by the information of an officer with an execution that he had levied on an undivided half interest in the southeast quarter of section 5, township 15 N., range 8, which appeared of record in the name of Chas. W. Kale. They then examined their deed, discovered the error, which has been testified by both Chenoweths and Kales to have been an error, and to correct this error a quitclaim deed was given by Kale to his wife, and also to correct the error so as to relate to the date of the deed a proceeding was begun to reform the same, in which this plaintiff was plaintiff, and Chas. W. Kale and both the grantors, Chenoweths, were defendants, all of whom waived process, admitted the mutual error and consented to its reformation, and a decree of the court was entered reforming the same, both as the error in the name of the grantee and another error in the range number where the land was situated, it being designated as 'east' instead of 'west.'

"From the decision of the court and the remarks he made in directing a case, the judge evolved a theory that the aid and assistance of the husband to the wife was itself of a value and character that made him a part owner of the products of the wife's property and industry and gave him an equitable interest therein, regardless of the purpose of the parties otherwise, and the question of intent in the purchase, and the fact of the purchase being made by the plaintiff for herself, in her own name, and paying therefor with money claimed by her as her own, was, in the opinion of the court, an immaterial one. The court held that the judgment was valid, not dormant, and an enforceable lien on the undivided one-half of the lands above described. Because the plaintiff, through energy, good judgment, hard work, good fortune in respect of rise in lands and cattle, had prospered with the property which was the nucleus of their early matrimonial venture, the court saw fit to take from the woman to pay the alleged ancient debts of her husband to a creditor who had followed the trail of their happiness and prosperity with the craft of a fox and the eagerness of a Shylock, biding the time when, like the python on the limb of an overhanging branch, he might wind the coils of his grasping about them. The amount involved

is not large, it is true, but the principle is as great as though a million were involved, and the question is, Shall the judgment stand?"

In the brief for defendant in error, the foregoing statement of the plaintiff in error is answered as follows:

"A few of the facts warranting the finding that C. W. Kale owned the property levied on are: That C. W. Kale, the judgment debtor, is the husband of Sylvie E. Kale, plaintiff in error; that at the time of the marriage of the plaintiff in error to C. W. Kale, she brought little or no property to the union; that since the marriage of the parties, C. W Kale has had the actual possession, management and control of all the property; that C. W. Kale had possession and control of the land purchased and levied upon for about two years before the execution of the deed by the Chenoweths; that the contract of sale which the Kales had drafted by one J. Collins was never delivered to the Chenoweths; that instead of sending this contract to the Chenoweths, C. W. Kale, wrote them a letter directing the manner in which the deed and other papers concerning the real estate should be executed; that this very important letter was not produced at the trial of the cause; that the letter received by the bank with the deed (Defendant's Exhibit 3) indicates that the papers were executed in accordance with directions received from Chas. W. Kale and Sylvie E. Kale; that both the Kales can read and write and had an opportunity to examine the deed before accepting same; that the deed was examined by their agent, J. Collins; that after such examination they accepted the deed and placed the same of record in the office of register of deeds of Kingfisher county, Okla.; that the plaintiff in error, Sylvie E. Kale, never made any attempt to have the alleged errors in the deed corrected until after the levy upon the interest of C. W. Kale; that C. W. Kale, the judgment debtor, was the principal witness for the plaintiff in error at the trial of the cause; that C. W. Kale had since the time of his marriage signed and used the name of S. E. Kale in transacting his own business; and that the only object of the Kales, in attempting to defeat the legal effect of the deed was to avoid the payment of an honest debt. The fact that both the Kales can read and write, and that they had an opportunity to examine the deed before accepting it, and that they did have it examined by their agent, J. Collins, before accepting same, is evidence that they knew its contents, and that the same was correct and expressed the intention of the parties.

"The evidence in this case not only sustains the conclusion that C. W. Kale was the owner of the land levied on, but also warrants the finding that he was the real and actual owner of much other property. To our minds, the facts shown by the evidence

are: That C. W. Kale made homestead entry of the tract of land in Kingfisher county in 1895; that he was the owner of personal property at the time of making the homestead entry, and until the judgment was rendered against him; that about the time the judgment was rendered, he pretended to transfer his personal property to his younger brother and to lease to this brother the cultivated land on the homestead; that at the time of the marriage of C. W. Kale to the plaintiff in error, this brother made her a present of a cow, which was the only property that she brought to the union; that about two years after the marriage C. W. Kale made final proof on the homestead; that shortly after making final proof he executed a deed purporting to transfer the homestead to his wife, Sylvie E. Kale, plaintiff in error; that about that time the brother made a pretended transfer of the personal property to Mrs. Kale; that Mrs. Kale has never had the actual control over any of the property; that C. W. Kale has always managed, controlled, and handled the property as if it were his own; that since the marriage of C. W. Kale to the plaintiff in error, C. W. Kale has carried on his business and handled his property under the name of S. E. Kale; that he has used the name of S. E. Kale in all his business transactions as if it were his own proper name; that under the name of S. E. Kale he has performed work and labor, farmed his homestead and other lands, bought and sold property, deposited money in banks, issued checks, made leases and other contracts, written letters and subscribed and sworn to tax assessments; that he would never sign the name of 'S. E. Kale, by C. W. Kale, Her Agent,' or in any other way indicate that he was her agent in dealing with the property; that even when Mrs. Kale was personally present and able to attend to her business, C. W. Kale looked after the business and signed and used the name of S. E. Kale; that in her personal matters Mrs. Kale used the name Sylvie E. Kale; that all of the property was acquired solely by the efforts of C. W. Kale, and that he is now and always has been the real and actual owner of the same.

"The contention of plaintiff in error that there was a valid consideration for the transfer of the homestead to Sylvie E. Kale, for the reason that C. W. Kale agreed to make such transfer at the time of the marriage, cannot stand for the reason that at the time of the marriage C. W. Kale had not made final proof to the land, and for that reason any agreement relating to the transfer of the same was void. Even if this homestead was exempt property, and for that reason could be transferred by the debtor with or without consideration, without constituting any fraud on his creditors, C. W. Kale still is the owner of a great part of the property since acquired by these parties. The personal property was not exempt at the time

of the pretended transfer by C. W. Kale to his brother, nor at the time of the pretended transfer by the brother to Sylvie E. Kale. Even if C. W. Kale had a right to make such transfer of the homestead without fraud on his creditors, the facts in the case prove he never really transferred the same. He never parted with the control or possession of the land.

"The evidence further shows that the Kales now possess property far in excess of the exemption allowed by law, and that this property was practically all produced through the efforts and good management of C. W. Kale. Even if it is proper to hold that Sylvie E. Kale is the owner of the homestead, that would not justify the finding that she is also the owner of the land levied on, or that she is the owner of all the property that has been accumulated through the efforts of C. W. Kale, and which he manages and controls as his own."

Without undertaking to state a complete analysis of the testimony or evidence in this case relating to the ownership of the said undivided one-half of the S. E. ¼ of section 5, township 15 N., range 8 W. I. M., it may be here observed that it shows that he was her superior in business capacity; and in view of the superior intellectual equipment of her husband for the conduct of business and the accumulation of property, apparent in a comparison of their testimony, the foregoing contention of the defendant in error appears to be substantially correct, and much more so than the foregoing contention of the plaintiff in error. And after an examination of the entire record in this regard we think it clear that the trial court committed no error in finding that the evidence was insufficient to show that the plaintiff held the equitable title to that portion of this tract of land. In Choctaw, Oklahoma & Gulf R. R. Co. v. Adolph Deperade, 12 Okla. 376, 71 Pac. 629, it is said on the last page of the opinion:

"The fact that the evidence is all on one side does not, it has been held, authorize the court to direct the jury that it proves a fact in controversy; its sufficiency is for them.' Thompson on Trials, § 1037; Charleston Ins. Co. v. Corner, 2 Gill (Md.) 411. The jury have the same power to refuse their credit to the testimony under these circumstances as they have where the testimony is contradicted, and no action of the court should control the exercise of their admitted right to weigh its credibility. The weight of the evidence always involves the consideration of the credit to be given to the witnesses, and this is the exclusive province of the jury."

In a case, whether in equity as the instant one is or at law, tried to the judge without

a jury, the former may, of course, reject any incredible testimony; but in the instant case, although a judge might properly and should decline to find that the naming of Chas. W. Kale as a grantee in the Chenoweth deed was the result of mistake, or was not intended by the plaintiff, it is not necessary to so discredit the testimony adduced by her to justify a denial of her petition for equitable relief, as such testimony, in view of the inferences properly deducible therefrom against her, does not satisfactorily exclude an equitable title in Chas. W. Kale and a purpose to defeat the Humphrey Bros.' judgment as the reason for her claim of title; and her evidence seems clearly insufficient to entitle her to such relief. And if the plaintiff did intend that the Chenoweth deeds should convey the title to the S. E. ¼ of section 5, township 15 N., range 8 W. I. M., it is not easy to believe from the record before us that she was equitably entitled to the same as against a creditor of her husband, or that her reason for so intending was other than to aid him in defeating his debt to Humphrey Bros.

We pass now to plaintiff's next contention. The plaintiff contends that the judgment in favor of Humphrey Bros. v. Chas. W. Kale is void and subject to her present collateral attack thereon because Humphrey Bros., although a partnership and therefore without full and complete legal entity, or right to sue, except in the names of the individuals composing the same (9 Mod. Am. Law, 308; 10 Mod. Am. Law, 148; Pollock v. Dunning, 54 Ind. 115; Am. Steel & Wire Co. v. Wire Drawers' & Dyemakers' Union Nos. 1 and 3 [C. C.] 90 Fed. 598; Nichols v. Bardwell Lodge No. 179, I. O. O. F., 105 Ky. 168, 48 S. W. 426; and a long line of cases cited in the brief for the plaintiff), did not sue in the name of such individuals; but the rule that a partnership must sue in the name of the individuals composing the same is a qualified and not an absolute one, as the partnership not only may, but must, sue, and it is well settled that, unless the defendant in some manner questions its capacity to sue in its own name and objects to being so sued, and unless, if the point be decided against him, he seeks and obtains a new trial or a reversal upon that ground, such judgment is valid and enforceable against him. Such a judgment, while irregular, is not a nullity, and is not subject to collateral attack. As stated in the L. R. A. note to the case herein next cited and quoted:

"At common law the process and pleadings in every action were required to disclose the Christian name and surname of all the parties thereto, the purpose being to render judicial proceedings certain and conclusive as between the parties, and to give full force and effect to the doctrine as res judicata."

In Spaulding Manufacturing Co. v. Godbold, 92 Ark. 63, 121 S. W. 1063, 29 L. R. A. (N. S.) 282, 135 Am. St. Rep. 168, 19 Ann. Cas. 947, it was held:

"That an action was brought and judgment rendered in the name of a partnership does not render it void where no objection was made thereto."

And see the following cases to the same effect cited in the L. R. A. note to the same: Ives v. Muhlenburg, 135 Ill. App. 517; Mackenzie v. School Trustees, 72 Ind. 193; Livingston v. Harvey, 10 Ind. 218; Hays v. Lanier, 3 Blackf. (Ind.) 322; Jones v. Martin, 5 Blackf. (Ind.) 351; Smith v. Chenault, 48 Tex. 455; Corder v. Steiner (Tex. Civ. App.) 54 S. W. 277; Stephens v. Turner, 9 Tex. Civ. App. 623, 29 S. W. 937; Bennett v. Child, 19 Wis. 362, 88 Am. Dec. 692; Frisk v. Reigelman, 75 Wis. 499, 43 N. W. 1117, 44 N. W. 766, 17 Am. St. Rep. 198; Barber v. Smith, 41 Mich. 138, 1 N. W. 992.

She also contends that that judgment is void and subject to her present collateral attack because not dated, although the words, "judgment rendered 24 Oct., 1898," immediately follow the signature of the justice of the peace to the judgment, and is signed by the same justice. This apparently shows, as an addendum, the date of such judgment. We thing it requires neither argument nor authority to show that the words, "judgment rendered 24 Oct., 1898," refer to the aforesaid judgment, that they are sufficient to constitute prima facie proof of date of such judgment, and that we should presume, in the absence of evidence to the contrary, that this entry was properly made.

She also contends that the judgment "was never regularly docketed in the district court," so as to become a judgment of that court, and so as to warrant an issuing of the execution from the office of the clerk thereof, and so as to give it the effect of a lien upon the land, if any, owned by the judgment debtor, Chas. W. Kale, as required by section 4412, Stats. 1893 (section 4710, Wilson's Stats.), the same, with minor amendments, being now section 5217, Rev. Laws 1910. This contention is based upon the fact that (probably because of "the courthouse fire in 1900") no transcript can now be found among the files of the district court, and the only record evidence thereof

is the entry of the essential facts shown by the same, as all judgments of that court were there entered in chronological, and not alphabetical, order, in the book used by the clerk as a judgment docket for the entry of transcripts or abstracts of judgments, together with an index of the same under the title of "Judgment Debtor" and under the first letter of the surname of the defendant in the front of that book, and an entry in the same book of the fact of their issuance of execution thereon, and because of the fact that the clerk omitted to "enter the case on the appearance docket, together with the amount of the judgment and time of filing the same." Our statutes in this regard were taken from Kansas, and in Dassler's Kansas Civil Code Ann. 1913, note 62, 1678, p. 1020, it is said:

"It is the filing of the transcript under section 517 of the Civil Code that gives the lien, and not the entries made by the clerk. The party files the transcript. He can do no more. It is the clerk's duty to make the required record, but if the performance of this duty is delayed, or even omitted, the lien is not lost. The transcript, when filed, becomes a public record, which imparts notice as fully as if properly recorded. Poplin v. Mundell, 27 Kan. 138; Lee v. Bermingham, 30 Kan. 312, 316, 1 Pac. 73; Bliss v. Brown, 78 Kan. 467, 96 Pac. 945."

In the case of Bliss v. Brown, supra, where the only evidence of compliance with our parent statute was the entry upon the appearance docket of the district court and also an entry of the case with date of issuance of execution, etc., upon the execution docket of the same, the Supreme Court of Kansas said:

"These entries, while not the best evidence that a transcript of the judgment was filed with the clerk of the district court, are some evidence of that fact. The statute expressly requires that the transcript of a judgment rendered by a justice of the peace, when filed, shall be entered upon the appearance docket. The entries therein are made in the performance of an official duty, and the presumption of law follows that they were rightfully and properly made. These entries show that a transcript of the judgment from the court of L. H. Webb, a justice of the peace, was filed in that office. They also give the date and amount of such judgment, and the names of the parties thereto. The entries on the execution docket corroborate these facts, and, altogether, are sufficient to establish prima facie that such a transcript was properly filed as provided by law. It will be observed that it is the filing of the transcript that gives the lien, and not the entries made by the clerk. The party files the transcript.

He can do no more. It is the clerk's duty to make the required record, but if the performance of this duty is delayed, or even omitted, the lien is not lost. The transcript, when filed, becomes a public record, which imparts notice as fully as if properly recorded."

It may be that, as against an innocent purchaser for value after actually examining and finding that there is no transcript among the files and the appearance docket shows no entry of the same, it would be deemed to have been the duty of the judgment creditor to see to it that the clerk made these entries, and, if necessary, take proper steps to compel the same, or at least, if he has knowledge of the loss or destruction of the transcript, it may be that it would be his duty as against such purchaser, if there be no entry thereof on either the appearance or judgment docket, to have restored the same; but, as between the parties to such judgment or between the judgment creditor and any others than such innocent purchasers, the mere filing of the transcript is sufficient to fix and preserve the lien given by section 4413, Stats. 1893 (section 4711, Wilson's Statutes; section 5218, Rev. Laws 1910).

She also contends that the first two executions, of October 12, 1903, and October 12, 1908, issued upon the Humphrey Bros. judgment, were not issued to be served, or in good faith, and that each issuance was therefore void; and, predicating her argument upon the conclusion that these issuances were void for the reasons stated and upon the fact that no other executions were ever issued upon that judgment except the one of October 11, 1913, which is more immediately involved in this case, she says that that judgment was not only dormant under the provisions of section 4337, Stats. 1893 (section 5153, Rev. Laws 1910), but that the time allowed for revival by section 4332, Stats. 1893 (section 5300, Rev. Laws 1910), and the related section 4325, Stats. 1893 (section 5293, Rev. Laws 1910), had expired, so that the lien, if any, of such judgment has not only been lost, but the execution of October 11, 1913, as well as any execution that might be issued upon such judgment, is and would be absolutely void—citing Denny v. Ross, 70 Kan. 720, 79 Pac. 502, Halsey v. Van Vliet, 27 Kan. 474, McGinnis v. Seibert, 37 Okla. 272, 134 Pac. 396, John G. Miller & Co. v. Drury L. Melone, 11 Okla. 241, 67 Pac. 479, 56 L. R. A. 620, and other cases.

Assuming, however, for the purpose of

this decision, that where a judgment creditor causes executions to be issued only to prevent the appearance of dormancy of judgment and not to be served, and accordingly causes them to be returned without service, a judgment may become dormant upon the grounds of his "bad faith," notwithstanding he does not allow as much as five years to elapse without procuring the issuance of an execution, the evidence in this case was not such as to have made it the duty of the trial court or as to now make it the duty of this court to find that Humphrey Bros. did not act in good faith, as the bare fact that the sheriff did not go out and make diligent search, but promptly returned each of the first two executions, showing that no property could be found, does not conclusively show that he did not fully discharge his duties, since it does not exclude the probability, in view of the fact that it appears from the assessment records that the debtor owned no taxable property at the last preceding date for assessing property for taxes, that he had sufficient knowledge of the facts as to make such search obviously futile, and, besides the fact that the burden of proof upon the plaintiff in the instant case is not sustained by her evidence, it affirmatively appears that Humphrey Bros., aided in one instance by the sheriff, made a considerable active effort to find property subject to the execution.

She also contends that the execution of October 12, 1913, is void and subject to her collateral attack because: (1) It contains no indorsement of the amount of the judgment or of costs upon its back, but showed on its face only such amounts as required by section 4338, Stats. 1893 (section 5154, Rev. Laws 1910), and does not appear to have been filed; and because (2) it was issued upon a praecipe "drawn by Grant Humphrey, one of the firm of Humphrey Bros.," who had become the sole owner of such judgment, describing the judgment therein as entitled Grant Humphrey v. Chas. W. Kale, and because the execution follows the praecipe in that respect; but such amendable irregularities (Christy v. Springs, 11 Okla. 710, 69 Pac. 864; 17 Cyc. 1017; Id. 1071; Id. 1044-1046; Id. 1048) did not render the execution void nor subject the same to this collateral attack thereon.

She also contends that the execution of October 12, 1908, although describing the judgment as "recovered by Humphrey Bros. against Chas. W. Kale for $77.78, with interest at 7 per cent. from October 24, 1898, $15.80 costs in the justice court," in the face of this execution, had no indorsement on the execution of the amount of judgment nor of costs; and that "the officer does not indicate the date he received the writ" and his return says: "Unserved for want of goods. No property."

She also contends that, although the execution commanded the officer to "make from the goods and chattels of Chas. W. Kale the above amounts and $2.90 accrued costs and for want of goods and chattels you cause the same to be made of the lands and tenements of the said ———," omitting the name of the persons whose lands and tenements are to be seized, this writ because of this omission would not require an officer to levy the execution upon the lands of the judgment debtor, unless the judgment could be collected by levy upon his personal property, and was therefore void and ineffective to prevent the dormancy of the judgment. We cannot agree with this contention. These irregularities would not render this execution void and it is not subject to this collateral attack by the plaintiff in the instant case.

She also contends (citing Fleece v. Goodrum, 62 Ky. [1 Duv.] 306; Halliburton v. Jackson, 79 Tenn. [11 Lea] 471; Cyrus v. Hicks, 20 Tex. 483; Beckham v. Medlock, 19 Tex. Civ. App. 61, 46 S. W. 402) that Humphrey Bros. should have procured a restoration of the lost transcript of their judgment before having execution issued thereon, and that an execution issued out of a district court while a transcript of the judgment that had been filed therein is lost is void. We do not think that such an execution is void, or that it is subject to collateral attack.

The plaintiff's cause appears to be without equity, and the judgment of the trial court is affirmed.

All the Justices concurring, except Justices HARDY and OWEN, who were absent.