Hills v. State.

## ROWLAND P. HILLS v. STATE OF NEBRASKA.

FILED APRIL 10, 1901.    No. 11,721.

1. Prosecution for Bigamy: TESTIMONY OF WIFE. A wife is a competent witness against her husband in a prosecution for bigamy.

2. Information: ALLEGATION OF MARRIAGE: PRESUMED LEGAL. The

mere allegation or averment of a marriage as a fact implies that the marriage was legal.

3. **Privileged Communication: MINISTER OR PRIEST: NOT MADE IN CONFIDENCE OF RELATION.** A communication to a minister of the gospel, or priest, is not privileged, where it is shown that it was not made in confidence of the relation, or was not to be kept as a secret.

4. **Voluntary Confession.** A confession of a prisoner voluntarily made, is admissible when not prompted by any inducement of hope or of fear.

5. **Void Marriage: PRIOR AGREEMENT.** A marriage solemnized in good faith is not void merely because the contracting parties may at some prior time have entered into an agreement or understanding that the marriage should be invalid.

6. **Foreign Marriage.** A marriage legal where solemnized is valid everywhere.

ERROR from the district court for Washington county. Tried below before BAXTER, J. *Affirmed.*

*Martin H. Leamy* and *Brome & Burnett,* for plaintiff in error:

A complaint must be verified by one who is a competent witness. 1 Bishop, New Criminal Procedure [4th ed.], secs. 232, 719, and authorities therein cited; *People v. Quanstrom,* 93 Mich., 254; Greenleaf, Evidence [Lewis's ed., 1896], sec. 374 *et seq.; Perez v. State,* 10 Tex. App., 327.

The witness who verified the complaint claimed to be the wife of the accused. The wife is not a competent witness against the husband in a criminal case. The statute makes an exception in a prosecution for an offense by the husband against the wife. But the weight of authority is against bigamy being one of this class of cases. *People v. Quanstrom, supra; Hiler v. People,* 156 Ill., 511; Underhill, Criminal Evidence [1898 ed.], sec. 400; 1 Bishop, New Criminal Procedure [4th ed., 1895], sec. 1153; Wharton, Criminal Evidence [8th ed.], sec. 397; 3 Greenleaf, Evidence [Lewis's ed.], sec. 206; *State v. Armstrong,*

4 Minn., 335, Gilfillan's ed., 251; *Compton v. State*, 13 Tex. App., 274; *Bassett v. United States*, 137 U. S., 496.

The complaint was defective, in that it did not charge that the first marriage was lawful. *King v. State*, 40 Ga., 244.

The communication to the Rev. Mr. Young was privileged. *Dehler v. State*, 53 N. E. Rep. [Ind.], 850.

*Frank N. Prout, Attorney General,* and *Norris Brown, Deputy, contra:*

The wife was a competent witness. *State v. Bennett*, 3 Ia., 24; *State v. Hazen*, 39 Ia., 648; *State v. Sloan*, 55 Ia., 219.

The information was substantially in the language of the statute, and was sufficient. *Whitman v. State*, 17 Nebr., 224; *Hodgkins v. State*, 36 Nebr., 160.

On the theory that Exhibit 9 was not received by the witness Young as a priest of the church under the pledge of secrecy, and that it was a voluntary statement not prompted by a hope of reward, a theory abundantly supported by the record, it was clearly admissible. *Langtry v. State*, 30 Ala., 536; *Halbrook v. State*, 34 Ark., 511; *State v. Johnson*, 12 Minn., 476, Gillfillan's ed., 378; *State v. Sanders*, 30 Ia., 582; *Wolverton v. State*, 16 Ohio, 173; *Squire v. State*, 46 Ind., 459.

NORVAL, C. J.

This was a prosecution for bigamy. A verdict of guilty was returned, and the defendant was sentenced to the penitentiary for the term of four years. The complaint before the examining magistrate was signed and sworn to by Eliza C. Hills, the first wife of the defendant. His counsel filed a plea in abatement to the complaint, on the ground that Eliza C. Hills was not a competent witness against accused, which was overruled, and the magistrate finding probable cause to believe that defendant was guilty of the crime of bigamy as charged, held the accused to the district court, where the county attorney

filed an information charging the offense substantially
in the language of the complaint. The defendant pre-
sented to the district court a plea in abatement based
on the same ground as that incorporated in the one filed
before the examining magistrate. A demurrer by the
state to this plea was sustained, and a general demurrer
to the information was overruled. On the trial Mrs.
Eliza C. Hills, over the objection of the defendant, was
examined and testified as a witness on behalf of the state.

The first contention of counsel for defendant is that
the court below erred in sustaining the demurrer to the
plea in abatement, since the information was based on
a complaint verified by the first wife of the accused. The
argument is that Mrs. Hills was an incompetent witness
against her husband in a prosecution for bigamy, and,
therefore, was disqualified from swearing to the com-
plaint. Section 331 of the Code of Civil Procedure de-
clares that "the husband can in no case be a witness
against the wife, nor the wife against the husband, ex-
cept in a criminal proceeding for a crime committed by
the one against the other, but they may in all criminal
prosecutions be witnesses for each other." This pro-
vision was under consideration in *Lord v. State*, 17 Nebr.,
526, where it was distinctly ruled that a wife was a com-
petent witness against her husband on an indictment for
adultery, since that was a crime committed by the latter
against the former. This holding was cited with ap-
proval in *Owens v. State*, 32 Nebr., 174. See *State v. Ben-
nett*, 31 Ia., 24; *State v. Hazen*, 39 Ia., 648; *State v. Sloan*,
55 Ia., 217; *State v. Hughes*, 11 N. W. Rep. [Ia.], 706.
There are authorities, some of which are cited in the brief
of counsel for defendant, which affirm the doctrine that
a statutory provision like our section 331 quoted above
is merely declaratory of the common law, and that
neither a husband nor a wife is a competent witness in
a criminal cause against the other, except in cases of
personal violence, the one upon the other. To this latter
view we are unable to assent. The statute in question

was not simply declaratory of what the law would be without section 331. To so hold would be to impute to the legislature a useless purpose, since the common law was then in force, except where modified by statute. The lawmaking body evidently, by this section, intended to establish a new rule, and make the husband and wife competent witnesses one against the other in any criminal action for a crime committed by one against the other, whether by the infliction of personal violence or not. The wife is a competent witness against the husband in a criminal prosecution for bigamy or adultery, inasmuch as these are crimes specially against her and not merely against the relation.

It is strenuously insisted that reversible error was committed in overruling the demurrer to the information. The argument is that the information did not charge a crime, because it did not allege that the first marriage was a lawful one. The information avers that "Rowland P. Hills on the 11th day of September, 1885, in the county of York, England, then and there being, did then and there marry one Eliza Cook Adsetts, spinster, and her the said Eliza Cook Adsetts, then and there had for his wife, and the said Rowland P. Hills being so married to the said Eliza Cook Adsetts, afterwards, and during the life of the said Eliza Cook Adsetts, his wife (who had not been continually and willfully absent from the said Rowland P. Hills and unheard from by him for five years, together next before the 11th day of March, 1899) did, on the 11th day of March, 1899, in the county of Washington and state of Nebraska, then and there, and then and there being, unlawfully, willfully and feloniously marry one Dollie Powell, the said Eliza Cook Adsetts, his former wife, being then alive," etc. The infirmity imputed to the information is lacking of merit. It is averred that the defendant was married at a specified time to a certain woman in England. This implies that the marriage was a lawful one. If unlawful, then there was no marriage. *State v. Hughes, supra.*

42

Rev. A. T. Young, the rector of the Episcopal church at Blair, was called and examined as a witness for the prosecution. His evidence reveals that almost immediately after the arrest of the defendant the latter sent for Rev. Young, who called upon him in the county jail. Hills's object in requesting his presence was to have the rector intercede with his first wife for a settlement of the criminal proceedings. Hills wrote a letter to the county attorney somewhat along the same line, which, at the defendant's request, was delivered to the prosecuting attorney by Young. The latter was also prevailed upon by defendant to carry his wishes to his first wife, the prosecuting witness. At the time Hills wrote out a synopsis of what he wanted Rev. Young to say to Mrs. Hills No. 1, which follows:

"1. Months to stay as prosecuting witness, with several trials.

"2. Promise of immediate divorce, which will free her in a few weeks.

"3. Payment of some of her expenses.

"4. The fact that she has severely punished me already, to carry it further might change public feeling and be thought vindictive."

This paper was put in evidence by the state, and its admission is assigned for error. The first objection to the paper in question is that it was received in evidence in violation of section 333 of the Code of Civil Procedure, which provides that "no practicing attorney, * * * minister of the gospel, or priest of any denomination shall be allowed, in giving testimony, to disclose any confidential communication, properly intrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline."

To render a communication to a minister of the gospel or priest privileged it must have been received in confidence. By this we do not mean that it must be made under the express promise of secrecy, but rather that the

communication was in confidence, and with the under-
standing, express or implied, that it should not be re-
vealed to any one.  The mere fact that a communication
is made to a person who is a lawyer, a doctor or a priest,
does not of itself make such communication privileged.
To have that effect, it must have been made in confidence
of the relation and under such circumstances as to imply
that it should forever remain a secret in the breast of the
confidential adviser.  In the case at bar there was ad-
duced evidence tending to show that the paper was not
committed to Rev. Young as a secret or in confidence.
On the other hand, he was enjoined by the defendant,
as is shown by the evidence, to make the contents thereof
fully known to Mrs. Hills, the first wife of the defendant.
Had the defendant requested Rev. Young to call a public
meeting of the citizens of Blair in the interest of the
former, and to address the same upon the subjects in-
cluded in the paper in question, handed to the godly man
as the subjects of his discourse, it would hardly have been
questioned by any one that the paper would not be priv-
ileged.  In principle there is no distinction between the
supposed case and the one with which we have been deal-
ing.  It is plain that Rev. Young betrayed no confidence
of the prisoner in revealing the contents of this paper
or writing.

It is also urged that this paper was inadmissible as
a confession, because it was prompted by an inducement
of hope or of fear.  The evidence on behalf of the state
discloses that it was voluntarily written and delivered
by defendant to Rev. Young without any suggestion on
the part of the latter that the accused would in the least
be benefited thereby, or that it was given on any promise
of reward or threat of punishment.

After the state had made out its case in chief, the de-
fendant moved, *ore tenus*, to strike from the record all
the evidence and certain exhibits adduced by the prose-
cution relating to the marriage ceremony between the
accused and the first Mrs. Hills, in England, in Septem-

ber, 1885, for the reason that the evidence on the part of
the state did not prove, or tend to prove, that the mar-
riage was valid.   In passing upon the motion the court,
in the hearing and presence of the jury, stated "there was
evidence in the record tending to show cohabitation in
the larger sense."   Exception was taken to this remark,
and its utterance is urged as a ground of reversal.   It is
true, as contended, that it was for the jury to determine
whether the accused and Mrs. Hills No. 1 were lawfully
married and cohabited as husband and wife.   The remark
of the court did not take this issue from the consideration
of the triers of fact.   The remarks of the court were elic-
ited by the motion of the defendant, and in passing
thereon the court gave its reason for denying the motion,
and as there was some evidence in the record upon which
the remark could properly be predicated, the criticism
upon this particular action of the trial court is overruled.
The mere overruling of the motion by the court without
giving any reasons therefor would be an expression of the
opinion that there was sufficient evidence to establish
the marriage of Hills in England.   The language of the
court was not prejudicially erroneous.

The court, at the request of the state, gave this in-
struction:

"4.  You are instructed that in this case, so far as the
validity or invalidity of the alleged first marriage is con-
cerned, it makes no difference whether or not the defend-
ant Hills or the witness Eliza Cook Hills, or either of
them, resided or had their usual place of abode or resi-
dence in the parish of Sheffield, England, before obtain-
ing the license, or before the marriage ceremony, and you
will therefore disregard all evidence received upon the
trial of this case on the subject of said residence and
places of abode, prior to the marriage ceremony on Sep-
tember 11, 1885, in so far as the question of the validity
or invalidity of the license and marriage ceremony are
concerned."

It is in evidence that the license under which the de-

fendant was married to his first wife was obtained by her in the parish of Sheffield, England, and in which parish the marriage ceremony was pronounced. In the affidavit upon which the license was issued the contracting lady stated that she had been a resident in the parish of Sheffield, England, for the fifteen days immediately prior thereto, and there was introduced evidence conducing to show that neither Mr. Hills nor his intended wife had ever been a resident of said parish. Chapter 76, Statutes George IV., relating to the solemnization of marriages in England, was introduced on the trial in evidence. Section 10 of said chapter provides that no license shall be issued to solemnize any marriage in any other church or chapel than in the parish church, or in some public chapel of the parish or chapelry within which the usual place of abode of one of the parties to be married shall have been for the space of fifteen days immediately before the granting of such license. Section 14 of the same statute provides, *inter alia,* in substance that the applicant for license shall make affidavit that one of the contracting parties has had a usual place of abode in such parish or chapelry within which the marriage is to be solemnized for fifteen days prior to the date of the license. Section 22 declares that if any person "shall knowingly and wilfully intermarry without due publication of banns, or license from a person or persons having authority to grant the same, first had and obtained, * * * the marriages of such persons shall be null and void to all intents and purposes whatsoever." Section 26 provides "that after the solemnization of any marriage * * * where the marriage is by license, it shall not be necessary to give any proof that the usual place of abode of one of the parties, for the space of fifteen days as aforesaid, was in the parish or chapelry where the marriage was solemnized; nor shall any evidence in either of the said cases be received to prove the contrary in any suit touching the validity of such marriage."

The English decisions rendered under the foregoing

provisions, some of which were introduced on the trial and incorporated in the bill of exceptions, affirm the doctrine that a marriage is not void merely because neither of the contracting parties was at the time a resident of the parish wherein the marriage ceremony occurred, and that the residence or place of abode of the parties does not affect the validity of the marriage. Manifestly, these adjudications are sound. No other interpretation can properly be placed on section 26 already quoted. But it is urged that that said section is not applicable here, for the reason that it declares a rule of evidence, relating to the remedy only, and that it can be given no extra-territorial effect. A ready answer to this is that a marriage legal where solemnized is valid everywhere. 1 Bishop, Marriage & Divorce [6th ed.], secs. 371-389. Therefore, section 26 can be considered for the purpose of ascertaining whether the first marriage of the defendant was valid in England. The validity of a marriage is to be determined by the law of the place where the same was solemnized, and section 26 was a part of the law of England when the first marriage took place. Under the authorities we have no doubt of its validity; and being binding upon the parties there, its validity can not be successfully assailed here. The instruction was, therefore, not inappropriate or erroneous.

The final contention of counsel for accused is that the court below erred in instructing the jury to the effect that the validity of the alleged first marriage of Hills was not affected by any agreement or understanding of the parties entered into before such alleged marriage that the same should not be considered as a valid or binding marriage. We quite agree with the learned counsel for the prisoner, that there can be no valid marriage without an agreement and consent of the parties to become husband and wife. The instruction criticised is not in conflict with the principle just stated. The instruction did not tell the jury that if at the time of the alleged first marriage of defendant there was an agreement that the

marriage ceremony was to be regarded as a sham, and to be of no binding force, and in pursuance of such understanding of the parties the marriage ceremony was pronounced, the marriage was not to be affected thereby. The purport of the charge was that any understanding or agreement between the contracting parties before marriage would not invalidate the marriage subsequently solemnized. This was undoubtedly sound, especially when the marriage was not solemnized in conformity with such prior agreement. The criticism of defendant's counsel upon this instruction is ably met by the brief of the attorney general, wherein it is stated: "An agreement to be married and an agreement that the marriage contract shall not be binding on either party, are inconsistent and contradictory. If the nullifying agreement is to receive the sanction of courts then the marriage contract can be dissolved by the parties themselves. All that would be necessary to dissolve or annul the marriage would be, not a decree of a court, but a simple agreement prior to the ceremony that the marriage would not be binding on either party. Neither public policy nor public conscience could suffer such a doctrine to live. We confess our inability to find where any court has ever before been asked to sustain this new and novel doctrine.

"In this case a valid first marriage was sought to be proven. There was record evidence of the ceremony. The wife testified to it, the defendant on the witness stand admitted the ceremony and his participation therein; admitted the authority of the Rev. Blakeney, vicar of the parish church, to issue license; admitted the authority of the Rev. Charles Knight to solemnize the marriage; did not deny the paternity of the child born eighteen months after marriage; introduced the woman as his wife to relatives and others; admits he signed the marriage register kept in the church where the ceremony was performed. Is he to be permitted now to claim this marriage was void because of an ante-nuptial agreement that it should not be binding? Where there is a pretense

of marriage for some other and ulterior purposes, mutually and jointly beneficial and agreeable to both parties, then there is no marriage. It is a pretense and in law ends there. This is the rule so elaborately sustained by counsel's citations.

"In the case at bar there was no pretense; there was a marriage contract and a marriage ceremony. The agreement to keep it secret was not a pretense, and could not avoid or invalidate it. Any agreement that it should not be binding and valid, before it was made, could not affect its validity after the ceremony was performed."

The defendant is a clergyman, "a teacher of high and noble precepts," and yet the record before us discloses that he has violated one of the Ten Commandments and the teachings of Holy Writ. The jury have found him guilty, and the verdict is manifestly right.

The judgment is accordingly

AFFIRMED.