MARY E. McHENRY v. THOMAS N. BRACKEN.[1]

December 23, 1904.

Nos. 14,064—(131).

**Marriage Contract.**

The validity of a contract of marriage must be determined by the laws of the state where the ceremony was performed.

**Divorce—Collateral Attack.**

A judgment of divorce rendered in a sister state may be collaterally impeached in an action in this state for want of jurisdiction appearing upon the face of the record.

**Decree of Divorce.**

Such a judgment imports absolute verity, however, and, to justify the court in holding it invalid, want of jurisdiction must affirmatively appear.

[1] Reported in 101 N. W. 960.

**Service of Summons.**

Under the statutes of Wisconsin the court is authorized to order, in an action for divorce, service of summons by publication, when it is made to appear that defendant cannot be found within the state. If a proper showing be made to the court that defendant cannot be found, and an order for publication be based thereon, a judgment entered pursuant to such service cannot be impeached collaterally by showing that defendant in fact resided in the state at the time.

**Proof of Publication.**

Proof that a summons was published for "six successive weeks" in a weekly newspaper sufficiently shows a publication "once a week" for six successive weeks.

**Order for Publication.**

Order for the publication of a summons construed, and *held* a sufficient compliance with the statutes of Wisconsin under which it was made.

**Marriage Valid.**

Judgment for divorce referred to in the opinion *held* not void for want of jurisdiction, and that the marriage between plaintiff and deceased was valid.

The probate court for Stearns county having made an order assigning to plaintiff as the widow of Henry B. McHenry, deceased, the homestead for her life and certain personal property of deceased, selected by her pursuant to the statute, defendant, a son of deceased by a former marriage, appealed to the district court for that county. Issues were framed and the case was tried before Searle, J., who found that plaintiff had never been legally married to deceased and was not his widow, and directed judgment reversing the order of the probate court. From an order denying a motion for a new trial, plaintiff appealed to the supreme court. Reversed and new trial granted.

*Theo. Bruener,* for appellant.

*F. M. White, Reynolds & Roeser,* and *Hubert Hansen,* for respondent.

BROWN, J.

Henry B. McHenry, whose true name was Henry Brackin, died on March 11, 1902, in the county of Stearns, this state, seised and possessed of certain real and personal property which the probate court

of that county decreed to plaintiff, Mary E. McHenry, as his surviving widow. Certain children of the deceased, by a marriage with a person other than plaintiff, appeared in the probate court, and disputed the claim of plaintiff that she was the widow of deceased, and demanded that the property be assigned to them as the sole surviving heirs. The probate court found that plaintiff was duly married to deceased in his lifetime, and entered a decree assigning the property of the estate to her. From that decree, defendant, a son of deceased, appealed to the district court, where, after trial, the decree of the probate court was reversed, the district court having found as a fact that plaintiff was not the widow of the deceased; that she had never been his lawful wife. From an order denying her motion for a new trial, plaintiff appealed.

1. The facts in the case are as follows: Some time about the year 1872, plaintiff, whose name was then Mary Quarles, was married in the state of Wisconsin to one Isaac Hillary, with whom she thereafter continued to live and cohabit until about 1881, when she deserted him, and went for a time to live with one Jones, who had at that time a wife, but was living separate and apart from her. She continued to live with Jones until about the year 1896, when she came to the state of Minnesota with Henry Brackin, deceased, and continued thereafter to live and cohabit with him until the time of his death. On November 16, 1898, she and deceased went to the city of Osceola, in the state of Wisconsin, where they were in form married to each other under the name of McHenry. The principal question in the case is whether this marriage was valid, and that is determined by the further question whether plaintiff was prior thereto divorced from Hillary—whether, in a certain action brought against her by Hillary for divorce, the circuit court of Grant county, Wisconsin, had jurisdiction of the action and the parties, and the judgment of divorce granted therein was valid. The trial court found that the circuit court of Wisconsin had no jurisdiction, and that the marriage between plaintiff and deceased was an absolute nullity.

2. The validity of the marriage must be determined from the laws of the state of Wisconsin, where it was solemnized. 19 Am. & Eng. Enc. (2d Ed.) 1211; Bishop, Mar. & Div. (5th Ed.) 354. The statutes of Wisconsin bearing upon this question are sections 2330 (c. 107) 2349

(c. 109), R. S. 1878. Section 2330 prohibits marriages where either party has, at the time the ceremony is performed, a husband or wife then living; and section 2349 provides that all marriages that are prohibited by law, on account of either of them having a former husband or wife then living, shall, if solemnized within that state, be absolutely void without judgment of divorce or other proceeding. These statutes were construed by the supreme court of Wisconsin in Williams v. Williams, 63 Wis. 58, 23 N. W. 110, where it was held that, if one of the parties to a marriage had a husband or wife living, the marriage is void ab initio. So that, if the judgment of divorce in the action of Hillary against plaintiff was void for want of jurisdiction, plaintiff had a husband living at the time of her marriage with deceased, and the latter marriage was, under that statute, a nullity.

3. In support of plaintiff's contention that she was duly divorced from Hillary by the circuit court of the state of Wisconsin, the records in that action were offered in evidence. The only papers or documents found in the clerk's office pertaining to the action are (1) an order signed by the county judge of Grant county, where the action was brought, who was, by the statutes of that state, authorized to make it, that the summons therein be served by publication; (2) an order appointing a referee to take and report the evidence; and (3) the judgment. The judgment recited the service of summons, the failure of the defendant to appear and answer, the appointment of a referee to take and report the testimony to the court, and concludes in a decree dissolving the marriage between the parties. All other papers pertaining to the action were missing from the files. The action was commenced about December 12, 1882, and judgment dissolving the bonds of matrimony between the Hillarys was entered on February 15, 1883.

4. The judgment was entered in the proper form and in accordance with the statutes of the state of Wisconsin, imports absolute verity, and can be collaterally impeached only for want of jurisdiction. Thelen v. Thelen, 75 Minn. 433, 78 N. W. 108; 2 Black, Judg. § 930. As held in Morey v. Morey, 27 Minn. 265, 6 N. W. 783, whenever a fact of divorce is sought to be proved by the certified transcript of the record of a decree of divorce rendered in another state, the validity of the decree may be inquired into and questioned for want of jurisdiction, if that defect affirmatively appear upon the face of the record itself.

93 M.—33

In Thelen v. Thelen, supra, it was held that want of jurisdiction might be shown in contradiction of the record.

But the rule of that case does not apply in the case at bar, for no attempt is made to impeach the judgment by evidence dehors the record, except to the extent—which does not appear upon the face of the record—that defendant was in fact a resident of Wisconsin when the action was commenced, in which case it is contended that service by publication is not authorized by the Wisconsin statutes. It is claimed, however, that want of jurisdiction affirmatively appears from the record itself. Unless it so appears, the presumption in favor of the judgment must prevail, and its validity be sustained, unless the contention as to residence just referred to is fatal. O'Malley v. Fricke, 104 Wis. 280, 80 N. W. 436.

5. We take up the alleged jurisdictional defects pointed out and relied upon by counsel for respondent in the order stated in their brief, and in doing so consider them in the light of the contention that, where jurisdiction of a party is obtained by the service of process by publication, statutes regulating that mode of service must be strictly complied with, and that all proceedings where service is so had, including the judgment, depend for their validity upon the sufficiency of the order of publication and its compliance with the statutes. Roosevelt v. Ulmer, 98 Wis. 356, 74 N. W. 124. Under the statutes of Wisconsin, in actions for divorce at least, service of summons by publication can only be had by order of the court; and in the case at bar an order appears to have been signed by a judge authorized to make it. The first question referred to by counsel relates to the sufficiency of that order; the contention being that it was not in compliance with the statutes, and insufficient authority for the publication of the summons.

6. Section 2640, R. S. (Wis.) 1878, provides that the court, where service of summons by publication is permitted, shall direct that the service be made by the publication thereof in some newspaper printed and published in the county where the action is brought, not less than once a week for six successive weeks. The order for publication in the case at bar, after reciting essential facts, provides as follows:

> It is hereby ordered that service of the summons in said action (hereunto annexed) upon the said defendant by publication of said summons in the Grant County Witness, a weekly news-

paper published in the city of Platteville, county of Grant, and state of Wisconsin, * * * once a week for six weeks, and that the first publication be made within three months from the date of this order.

It will be observed that the order does not provide in express terms that the service of summons "be made" by publication thereof. The words "be made" should have been inserted in the order following the word "action," but were omitted, undoubtedly through inadvertence. If they had been inserted, the order would have read that "service of summons in said action be made by publication." But the error is in no sense fatal to the sufficiency of the order. The order, taken as a whole, clearly confers authority upon plaintiff in the action to serve the summons therein by publication.

7. It is also urged that it does not appear that the complaint in the action had been filed with the clerk of the court before the order for publication was made. The order expressly recites the fact that the complaint, duly verified, was on file with the clerk of the court, and that fact was made in part the basis of the order. It is true that the court calendar or minutes of the clerk disclose, according to the dates therein given, that the complaint was filed subsequent to the date of the order; but the order of the court is the best evidence of the fact, and the recital therein that the complaint was on file cannot be impeached or overcome by the minutes of the clerk. Section 2641, R. S. (Wis.) 1878, provides that any order for service by publication shall be presumptive proof of the existence of all facts required to be shown to authorize the same to be made, and conclusive in all collateral proceedings.

8. The statutes of Wisconsin provide for the service of summons in an action for divorce when defendant cannot be found within the state, and, when an order for such service is made, that it shall contain a direction that the summons be mailed to defendant, or that the mailing be omitted when his post-office address cannot be ascertained. O'Malley v. Fricke, 104 Wis. 280, 80 N. W. 436. In the case at bar it appeared that the whereabouts of defendant was unknown, and that personal service of the summons could not be made upon her. We are bound to presume that a sufficient showing in this respect was

made to the court. Sommermeyer v. Schwartz, 89 Wis. 66, 61 N. W. 311. The court, under such circumstances, was authorized to direct the service by publication, but was required to include in the order the directions just referred to. The order in question, though perhaps its phraseology is open to technical criticism, contained a direction in conformity with the statute.

9. The fact that defendant was a resident of Wisconsin during the pendency of the action is not fatal to the jurisdiction. The essential fact to authorize the serving of the summons by publication was that defendant could not be found in the state; and that fact was shown and made the basis of the order for publication.

10. It is also urged that the judgment on its face shows a want of jurisdiction in the court for the reason that it recites the manner in which the summons was served upon the defendant, and does not show that the service was in accordance with the statutes in such case provided. The affidavit of publication is one of the missing files, but the judgment recites that one was filed, and that it appeared to the court therefrom that the summons was duly served upon the defendant by the publication thereof in the Grant County Witness for six successive weeks, beginning on December 14, 1882, and concluding on January 18, 1883. The point made in this connection is that the judgment does not show that the summons was published "once a week" for six successive weeks. It appears from the order for the publication of the summons, and from the judgment itself, that the Grant County Witness was a weekly newspaper, and the judgment recites that the summons was published therein for six successive weeks. This, in connection with the presumption of jurisdiction which must be indulged in support of the judgment, shows beyond any serious controversy a publication of the summons "once a week" for six successive weeks. Iowa v. Jacobson, 8 S. D. 292, 66 N. W. 453.

It might have been different had it appeared that the newspaper in which the summons was published was a daily paper; for the inference might be drawn in such case that the summons was not published once each week, even though the showing made was that it had been published for six successive weeks. Godfrey v. Valentine, 39 Minn. 336, 40 N. W. 163. No case has been cited from Wisconsin which can be said to decide this particular point. There is an intimation in Frisk

v. Reigelman, 75 Wis. 499, 43 N. W. 1117, 44 N. W. 766, to the effect that an affidavit omitting the words "once a week" from an affidavit stating that a summons had been published therein for six weeks would be defective. But the question was not squarely presented to the court and decided, and we feel safe in anticipating a decision of the supreme court of that state by holding that, after the lapse of more than twenty years from the entry of judgment, a defect of this character is not jurisdictional, but at most an irregularity not affecting the power or authority of the court to render the judgment.

11. We have considered with care all the other assignments of error, and the contentions made by defendant in support of the claim that the judgment of divorce was void for want of jurisdiction, and reach the conclusion that they are not well taken. It appears that subsequent to the rendition of that judgment both parties acted on the theory that it was valid, and effectually dissolved the marriage relations existing between them. Hillary, some four years after the entry of the judgment, remarried; and plaintiff herein, some sixteen years thereafter, married deceased. New marriage and family relations have been contracted by the parties thus judicially separated. Neither has ever questioned the validity of the judgment, and, having been of record in the Wisconsin court for over twenty years, it should, in the absence of clear and satisfactory evidence of want of jurisdiction in the court to render it, be sustained, thus avoiding unsettling and disturbing relations of long standing, contracted and entered into in reliance on its validity.

Our conclusions are that the findings of the learned trial court, to the effect that the judgment of the Wisconsin court dissolving the bonds of matrimony between the Hillarys was void for want of jurisdiction, are not sustained by the evidence.

Order reversed, and new trial granted.