# IN RE ESTATE OF NICK OMMANG.
## KAREN A. OMMANG IVERSEN, APPELLANT.[1]

March 13, 1931.

No. 28,329.

[1]Reported in 235 N. W. 529.

W. A. *Watts* and *John Heitman,* for appellant.

*James E. Gardner,* for respondent.

OLSEN, J.

Appeal by Karen A. Ommang Iversen from an order denying her motion for a new trial.

This is a contest between the appellant above named and the respondent, Henrietta Ommang, as to who is entitled to administer the estate of one Nick Ommang, a resident of St. Louis county, in this state, who died intestate at Duluth in said county on March 13, 1929. Appellant is a half sister of the decedent and claims to be one of his heirs at law entitled to the estate and to be entitled to have an administrator appointed. Respondent claims she is the widow of the deceased and his sole heir and entitled to have an administrator appointed. The probate court of St. Louis county found against the respondent and held she was not the lawful wife of the deceased prior and up to the time of his death. On appeal to the district court, that court reversed the probate court and held

that respondent was the lawful wife of the deceased prior to and at the time of his death, his sole heir at law, and entitled to have an administrator appointed.

The decisive question here presented and argued is whether the trial court erred in holding that respondent was the lawful wife of Nick Ommang at the time of his death. Some other matters are assigned as errors in the brief but, as we view the case, are not important or decisive.

■ In 1907 Nick Ommang and respondent, whose name was then Mrs. Seligman, were residents of Superior, Wisconsin. Respondent had secured a divorce from her husband on January 2, 1907. On August 7, 1907, respondent and Nick Ommang went to Duluth and were there lawfully married. They returned to Superior immediately after the marriage and lived there together as husband and wife for about two years. They then separated and decedent moved to Duluth late in 1909 and there resided until his death. Respondent remained in Superior for about two more years, then moved to Duluth and resided there for three or more years. She then came to St. Paul to live with a daughter of her prior marriage and has since resided there. After their separation decedent met and visited the respondent from time to time, but they did not thereafter live together. After respondent moved to St. Paul decedent visited her there many times. At one time he took her out to entertainments there. He gave her money at times. He asked her to come back and live with him. One time, at his request, respondent came to Duluth and stayed with decedent in his room over night. He wanted her to remain, but she did not like the place or surroundings where he was living and left the next day. This evidence, while it does not clearly prove cohabitation by the parties in this state, does show that decedent recognized the marriage relation existing between them and acknowledged respondent as his wife after both parties had become residents of this state. We do not hold that actual cohabitation in this state, under the circumstances shown, was necessary.

The marriage of the parties in this state, more than six months after respondent had obtained a divorce from her former husband,

was a valid marriage under our laws. Its validity, at the time of the death of one of the parties in this state, after both parties were and had been residents of this state for many years, is now attacked. The marriage has never been set aside or adjudged invalid.

■ The general rule, that the validity of a marriage must be tested by the laws of the state or country where the marriage ceremony was performed and that a marriage valid where performed is valid everywhere, as well as the exceptions to the general rule, has been argued. The general rule is followed in this state. Earl v. Godley, 42 Minn. 361, 44 N. W. 254, 7 L. R. A. 125, 18 A. S. R. 517; McHenry v. Bracken, 93 Minn. 510, 101 N. W. 960; Lando v. Lando, 112 Minn. 257, 127 N. W. 1125, 30 L.R.A.(N.S.) 940; Meisenhelder v. C. & N. W. Ry. Co. 170 Minn. 317, 213 N. W. 32, 51 A. L. R. 1408. Under this rule the celebrated Gretna Green marriages in Scotland were held valid in England, although they would have been invalid if performed in England. Ilderton v. Ilderton, 2 H. Bl. 145; Dysart Peerage Case, L. R. 6 App. Cas. 489. The rule is followed in the great majority of our states. See notes to Hills v. Nebraska, 61 Neb. 589, 57 L. R. A. 155; Washington v. Fenn. 47 Wash. 561, 92 P. 417, 17 L.R.A.(N.S.) 800; Johnson v. Johnson, 57 Wash. 89, 106 P. 500, 26 L.R.A.(N.S.) 179; Nebraska v. Hand, 87 Neb. 189, 126 N. W. 1002, 28 L.R.A.(N.S.) 753; Cunningham v. Cunningham, 206 N. Y. 341, 99 N. E. 845, 43 L.R.A.(N.S.) 355. This general rule has application when the marriage was performed in one state or country and the question of its validity arises in the courts of another state or country. The rule and the exceptions thereto would seem to have but incidental bearing upon the present case, where the marriage was performed in this state and was valid under our laws; the parties thereto were residents of this state at the time one of them died; the survivor remains a resident here; and the validity of the marriage is challenged in a court of this state.

■ The ground urged by appellant for holding the marriage invalid is that the law of Wisconsin, wherein the parties resided at the time of the marriage, provides that it shall not be lawful for a divorced person to remarry within one year after the judgment of

divorce was entered, and declares any such marriage, within the year, null and void. The Wisconsin court, in Lanham v. Lanham, 136 Wis. 360, 117 N. W. 787, 17 L.R.A. (N.S.) 804, 128 A. S. R. 1085, held that this statute invalidated a marriage performed in Michigan, where the parties were residents of Wisconsin and, for the purpose of evading the law, went to Michigan, were there married, and returned to Wisconsin to live. That decision is the law in Wisconsin and in some other states; but, as pointed out in the note to Hills v. Nebraska, 61 Neb. 589, 85 N. W. 836, 57 L. R. A. 155, note p. 169, while there is decided conflict in the authorities, the weight of authority holds, in the absence of any express statute declaring such marriages invalid, and we have no such statute, that, if the marriage is valid according to the law of the state where performed, it will be upheld in the state where the parties reside, even if it would have been invalid if there performed and even if the parties went out of the state with the purpose of evading the law of their domicile. This majority rule applies with added force where the marriage is questioned in the state where it was performed and at a time when the parties thereto are residents of that state.

■ This court, as stated, has consistently followed the rule that the validity of a marriage is to be tested by the laws of the state or country where it was performed. In McHenry v. Bracken, 93 Minn. 510, 101 N. W. 960, the marriage was performed in Wisconsin, and it was held that the validity of the marriage must be tested by the laws of that state.

In Lando v. Lando, 112 Minn. 257, 127 N. W. 1125, 30 L.R.A. (N.S.) 940, the marriage was performed in Germany, and it was held that its validity must be tested by the laws of that country. The court said that this rule applied to cases where the parties were mere sojourners in the place where the marriage was performed, and that a marriage legal where solemnized is valid everywhere. In that case also the court refers to the presumption in favor of marriage and the caution which courts will exercise in declaring a marriage regularly performed invalid.

The Meisenhelder case, 170 Minn. 317, 213 N. W. 32, 51 A. L. R. 1408, was an action to recover for the death of one D'Albani under

the federal employers liability act. Louise D'Albani claimed to be his widow and beneficiary. The parties resided in Illinois, and decedent was there killed. The cause of action arose in that state. If Louise D'Albani was not the lawful wife of decedent under the Illinois law, she was not a beneficiary under the act and no cause of action existed in her favor. In other words, her status as the wife of decedent in Illinois was an essential link in the cause of action. The general rule that a marriage valid where performed is valid everywhere is not departed from in this case, except to the extent of holding that, where a marriage between residents of Illinois is by the laws of that state declared invalid although performed in another state where it is not invalid, the laws and decisions of Illinois, where the cause of action arose, govern the cause of action here. Had the marriage been a valid marriage performed in Illinois, it could not have been questioned here.

The case of Cummings v. U. S. 34 F. (2d) 284, involved war risk insurance. The war risk insurance law provides that marriages shall be proved to be legal according to the law of the place where the parties resided at the time of the marriage or at the time when the right to compensation or insurance accrued. The marriage in that case was performed in Minnesota, but the parties resided in Wisconsin; hence, under the war risk insurance act, the validity of the marriage was to be tested, not by Minnesota law but by the laws of Wisconsin, which laws declared the marriage invalid.

Other decisions cited by appellant have reference to cases where the marriages were performed in states other than those wherein the actions were tried. They are decisions from the minority group of courts, which hold that where residents of the forum go to another state to be married, with intent to evade the law of the state of their residence, and the law of the forum expressly declares such marriages invalid, the court will enforce the law of its own state and hold such marriages invalid. The decisions of this state point rather to the majority rule. ' We have no law like Wisconsin and Illinois, declaring that where residents of this state go to another state to be married, with the intention of evading the marriage laws of this state, such marriage in another state shall be here invalid.

■ The case of State v. Yoder, 113 Minn. 503, 130 N. W. 10, L. R. A. 1916C, 686, is of interest here. There the parties were first married in this state within six months after they had been divorced in North Dakota. The marriage was in violation of the laws of this state prohibiting the marriage of divorced persons within six months after the divorce. A year later the husband married another woman in this state. He was convicted of bigamy in contracting the second marriage. The court said it was well settled that in order to convict for bigamy the state must establish a valid first marriage existing at the time of the second marriage. It further said that if the first marriage was one declared null and void by statute defendant could not be convicted of bigamy for contracting a second marriage. But the court held that the first marriage, although in violation of our marriage laws, was not expressly declared null and void by our statutes, was voidable and not void, and had not been canceled or declared void by any court. The court held that the first marriage remained in force and valid and that defendant could be convicted of bigamy for contracting the second. The distinction between void and voidable marriages is pointed out, and a marriage contracted in this state within six months after one of the parties has been divorced is held not a void marriage.

■ Counsel urge that the parties came to Minnesota to be married with the intention of avoiding the Wisconsin law, and therefore the marriage should be held invalid here. We are not prepared so to hold. The marriage was legal in this state, and the parties did not evade or seek to evade any of our laws.

Counsel cite the later Wisconsin statute, enacted several years after the marriage of the parties. That can have no application to prior marriages and adds nothing to the Lanham case, 136 Wis. 360, 117 N. W. 787, 17 L.R.A.(N.S.) 804, 128 A. S. R. 1085, in any event.

Order affirmed.