Shieutag, J.
This contest concerns the administration of the estate of the decedent, Elizabeth Jones Peart, who at the time of her death on April 3, 1949, and for some years prior thereto, was a resident of New York. The petitioner, Roland Peart, also known as James Peart, applied for letters of administration as the surviving husband of the decedent. In this he was opposed by the objectant-appellant, a sister of the decedent. She claimed that the petitioner was not the surviving husband, and in support of that claim urged that the divorce which petitioner had obtained from his first wife in the State of Virginia was invalid for lack of jurisdiction in that the petitioner had not acquired a bona fide residence for the required period of time, in that State. This issue, largely one of fact, was resolved by the learned Surrogate in favor of the petitioner; that finding is supported by the evidence and we are not disposed to interfere with it. That was the only issue litigated below.
On appeal, for the first time, another issue is raised. It is now claimed that the divorce which petitioner obtained in Virginia was, in effect, a decree nisi for a period of four months, and that his marriage to the decedent in the State of Maryland within that four months’ period was void and should be so treated in every State where the issue is presented. We could remit the proceedings to the Surrogate’s Court to take testimony concerning the pertinent Virginia and Maryland law. In view of the small size of the estate, however, which has already been subjected to considerable expense, we feel that in the interests of justice we should decide the new question raised on the basis of the cases submitted by counsel on this appeal, aided by our own independent although necessarily circumscribed research (Civ. Prac. Act, § 344-a; Graybar Elec. Co. v. New Amsterdam Cas. Co., 292 N. Y. 246).
The facts, briefly stated, are that the petitioner and one Elizabeth Peart, not the decedent, were married in New York in 1936 and lived together as man and wife in this State until 1944. Petitioner was a laborer and also an itinerant preacher. He separated from Elizabeth Peart and went to Virginia where, as the learned Surrogate has found, he established a bona fide residence. In 1946 he procured a divorce. The decree was entered by default on May 17,1946, after service by publication *64 upon Elizabeth Peart. The wife did not appear in the action either personally or by attorney, nor was she living in the State of Virginia at the time. The decree granted to Peart on May 17, 1946, recited the facts and the source of jurisdiction and then ordered and decreed that 1 ‘ said Roland Peart be divorced a vinculo matrimonii from the said Elizabeth Joyner Peart and the said marriage is dissolved, but neither party shall marry again within four months from the date of the entry of this decree and this cause is removed from the docket.”
Before the expiration of four months on July 3, 1946, Peart married Elizabeth Jones, the decedent, in Maryland. In his application for a marriage license in Maryland, the petitioner stated that he was single. There was nothing in the application form that required him to state whether he had previously been married and whether and under what circumstances he had received a divorce. After the Maryland marriage, Peart and the decedent returned to New York, where they lived until Mrs. Peart died.
It will be noted that, as above set forth, the Virginia decree of divorce obtained by petitioner is absolute and merely contains a prohibition against another marriage by either party for a limited period. It does not incorporate, by reference or otherwise, any statutory penalties or consequences for failure to observe the inhibition against marriage during the prescribed period. No provision is made in the State of Virginia for an interlocutory decree of divorce. Thus far, therefore, no real problem would be presented. We would be confronted with a final decree and a prohibition against another marriage by either party for a limited period which, by the weight of authority in this country would have no extraterritorial effect.
A State, when it grants a final decree of divorce, may prohibit either or both of the parties from marrying again during a prescribed period of time. Under New York law, if a marriage takes place in this State in violation of a prohibition contained in one of our decrees of divorce (adultery being the sole ground for divorce in New York), the marriage will be treated as void; not so, however, if that prohibited marriage occurs in another State. That represents our public policy, as will hereafter be more fully developed. (Van Voorhis v. Brintnall, 86 N. Y. 18.)
On the other hand, it is entirely appropriate for a State to provide by law (decisional or statute) that if, in violation of a provision in one of its decrees for divorce, a party affected marries in another State, that marriage will be treated as void in the State granting the decree and the offender may be *65 punished criminally therefor in that State. (Van Voorhis v. Brintnall, 86 N. Y. 18, 28, supra.)
When the decree of divorce here involved was granted in Virginia, there was a statute of that State, section 5113 (now § 20-118) of the Virginia Code, as amended in 1934, which provides as follows: “ § 20-118. Dissolution of bond of matrimony; neither party to marry for four months. — • On the dissolution of the bond of matrimony for any cause arising subsequent to the date of the marriage, neither party shall be permitted to marry again for four months from the date of such decree and such bond of matrimony shall not be deemed to be dissolved as to any marriage subsequent to such decree, or in any prosecution on account thereof, until the expiration of such four months; provided that nothing herein contained shall be deemed to prohibit divorced persons from remarrying each other at any time.” (Code of 1919, § 5113; L. 1934, p. 445; L. 1944, p. 181.)
We agree that this statute is to be deemed applicable to any decree of divorce granted (other than for adultery) in the State of Virginia as though it had been incorporated in that decree.*
, At the time this statute was passed, it was the opinion in Virginia that a divorce decree under this section was a final decree, not merely a decree nisi. For instance, in 1922 it was stated in 7 Virginia Law Register (N. S.) 818: “ Notwithstanding sec. 5113, Code of 1919 which provides that: 1 such bond of matrimony shall not be. deemed to be dissolved as to any subsequent marriage, or in any prosecution on account thereof, until the expiration of six months ’ from the date of the decree, at the end of the term in which the decree as to status is pronounced, and also concerning the estates of the parties upon divorce a vinculo, it is final, though no marital rights attach *66 to subsequent marriage, as it is void, and party re-marrying within such period is subject to criminal prosecution for bigamy.”
The reference to the “ end of the term ” is explained in 7 Virginia Law Register (N. S.) 811 as meaning that the jurisdiction of the court over judgments relating to status expires after the end of the term in which the judgment is pronounced and hence it must be final.
The problem presented on this appeal, therefore, turns on the construction of this statute as it applies to the decree of divorce here in controversy.
When we examine the Virginia statute, we find that it does not purport to transform the final divorce decree into a decree nisi. Indeed, the statute specifically recognizes the final dissolution of the marriage; and it is clear from the statute that another marriage by either of the parties within the prohibited period would certainly be treated in Virginia as void and in violation of the penal law of that State, wherever that prohibited marriage took place, within or without the State.
But the appellant-obj ectant urges that the statute says in effect that the marriage is dissolved for all purposes except that “ such bond of matrimony shall not be deemed to be dissolved as to any marriag*e subsequent to such decree, or in any prosecution on account thereof, until the expiration of such four months ”. In the absence of any square holding to the contrary, we would not construe this statute as setting up some new form of divorce decree, in part final and in part interlocutory. The phrase, “or in any prosecution on account thereof,” must of necessity refer to criminal prosecution in Virginia, since the Virginia Legislature would hardly attempt to regulate criminal prosecution by foreign States. The remaining portion of the clause, “ and such bond of matrimony shall not be deemed to be dissolved as to any marriage subsequent to such decree * * * until the expiration of such four months ”, merely states the civil consequences which would arise in Virginia if the inhibition against another marriage in the first part of the section is disregarded anywhere.
However, the Supreme Court of Appeals of Virginia, in 1923, dealt with this section, as it then read, in the case of Heflinger v. Heflinger (136 Va. 289) where a party to one of its divorce decrees married in the State of Maryland before the expiration of six (later changed to four) months. All that the Supreme Court of Appeals of Virginia was called upon to *67 decide was whether under its statute this Maryland marriage during the prohibited period was invalid in Virginia. Whether its decree of divorce would be considered final or nisi did not matter. The Virginia court, under the decree and under the statute in controversy, clearly had the right to hold the Maryland marriage void in Virginia. The Supreme Court of Appeals of Virginia, however, went beyond the necessities of the case and wrote as follows (p. 304): “ As to any subsequent marriage, there was no divorce. The ‘ bond of matrimony ’ created by the first marriage was not dissolved so as to permit another marriage. The parties to the first marriage were absolved from many of the obligations imposed by that marriage, but not from the obligation to refrain from marrying another during the six months. As to this obligation, they continued to be husband and wife for six months from the date of the decree for divorce, and neither could lawfully intermarry with another. Such is the meaning of the language used, and the marriage in controversy brought the parties thereto within the meaning of sections 5087 and 5089 of the Code hereinbefore quoted in the margin.”
The court went on to say in effect that its construction of the statute is as much a part of the decree as though copied into the decree itself and is entitled to full faith and credit in every State of the union under the Constitution of the United States. On this point the court said (p. 310): “ The decree of divorce was entitled to the same faith and credit in Maryland as in Virginia. No more and no less. If not effective as a complete divorce in Virginia until the expiration of six months, it was not so effective in Maryland, and the Maryland marriage was void as well under the law of Maryland as under the law of Virginia. Such would seem to be the proper application of the full faith and credit clause of the Federal Constitution.”
Generally speaking, we would be bound by the construction placed upon the statute of another State by the highest court of that State. We have great respect for the Virginia court rendering this decision. But when that court uses language construing a statute which is not necessary for the decision of the case before it, and sets forth what is and what is not entitled to full faith and credit in another State, I do not conceive its views to be binding upon us.
Moreover, taking the opinion as a whole, what do we find? The parties are and are not divorced. For all purposes except one, they are divorced and the decree is final at once. In other words, if either of the parties should die during the prohibited *68 period the divorce would he treated as final, not as interlocutory in any respect (see dictum in Simpson v. Simpson, 162 Va. 621). Heflinger v. Heflinger (supra), in effect, says however that as to the obligation not to marry again during the prohibited period they remain husband and wife. For reasons of its own, no provision is made in Virginia for an interlocutory decree of divorce or a decree nisi as those terms are commonly understood in the law. By its construction of the statute here involved, the court seeks to set up some new hybrid form of divorce decree, and this to apply not only to the party over whom it had personal jurisdiction but to a resident of our State, who was not present in person before the court and was served by publication.
No matter what language may be used, the fact is that this decree constitutes a final and absolute decree of divorce coupled with a provision that if either of the parties marries again, anywhere, that violation of the prohibition or restriction in the final divorce decree will be treated as void in Virginia, and penal consequences will also attach thereto. On this point, therefore, we hold that the dictum of the highest court of Virginia is not entitled to full faith and credit in this State, particularly where the rights of our own residents are being litigated; and that, even accepting the construction at its face value, we would still consider the decree of Virginia as - an absolute and final one, with consequences, civil and penal, attaching in Virginia to a violation of one of its provisions ■ — • consequences which do not necessarily affect the finality of the decree of divorce in other States.
It may also be observed that after decisions dealing with this section, the Virginia Legislature added the proviso in 1934, which was not formerly in the statute, that “ nothing herein contained shall be deemed to prohibit divorced persons from remarrying each ■ other at any time. ’ ’ If the Virginia decree were merely equivalent to a decree nisi not ripening into a final divorce until four months after the decree, under familiar principles the parties might abandon the divorce proceeding, ask to vacate the decree nisi and resume marital life (3 Nelson on Divorce and Annulment [2d ed.], § 28.07, p. 134; 2 Bishop on Marriage, Divorce and Separation, §§ 1517, 1518; Civ. Prac. Act, § 1176; Armstrong v. Armstrong, 176 Misc. 240; see, also, Virginia Code, §§ 20-120, 20-121.1; 4 Code of Virginia [1950], pp. 431, 432).
“ By the universal practice of civilized nations, the permission or prohibition of particular marriages of right belongs *69 to the country where the marriage is to be celebrated. ’ ’ (Cropsey v. Ogden, 11 N. Y. 228, 236.) “ There are no doubt exceptions to this rule; cases, first of incest or polygamy coming within the prohibitions of natural law * * *; second, of prohibition by positive law.” (Van Voorhis v. Brintnall, 86 N. Y. 18, 26, supra.) The marriage here attacked took place in Maryland, and it is indeed unfortunate that no court decision or statute of the State of Maryland has been brought to our attention showing how that State would treat the Virginia decree (but compare Bannister v. Bannister, 181 Md. 177, and Dimpfel v. Wilson, 107 Md. 329). In West Virginia, the Court of Appeals held that what the Virginia court said about the statute in Heflinger v. Heflinger (supra) was binding upon it (Johnson v. State Compensation Comr., 116 W. Va. 232). We do not follow that decision, although we would have been obliged to follow a similar decision if made by the highest court of the State of Maryland. There is every presumption in favor of the validity of a marriage (Fisher v. Fisher, 250 N. Y. 313). We could, of course, rely on that strong presumption. We prefer to hold, however, that, absent any Maryland law on. the point, the question being raised in our courts and directly affecting our residents and the administration of an estate in New York (and even indirectly affecting the status of our resident against whom Virginia gave an ex parte divorce), we may deal with this case in accordance with the laws and public policy of New York as though the marriage attacked had here taken place.
Prom an early date our statute prohibited the second marriage of one against whom a divorce was granted for adultery during the life of the other party to the marriage and declaring such second marriage void. In a line of cases following the leading case of Van Voorhis v. Brintnall (86 N. Y. 18, supra) it was held that the prohibition against such subsequent marriage did not apply to a marriage contracted outside of the State and that this was true even though that marriage took place in the other State for the purpose of evading our law, the parties returning here after such marriage (Van Voorhis v. Brintnall, 86 N. Y. 18, supra; Thorp v. Thorp, 90 N. Y. 602, 605).
Section 8 of the Domestic Relations Law, as amended, reads as follows: ‘‘ § 8. Marriage after divorce for adultery. Whenever a marriage has been or shall be dissolved, the complainant may marry again during the lifetime of the defendant. But a defendant for whose adultery the judgment of divorce has been granted in this state may not marry again during the lifetime *70 of the complainant, unless the court in which the judgment of divorce was rendered shall in that respect modify such judgment, which modification shall be made only upon satisfactory proof that three years have elapsed since the decree of divorce was rendered, and that the conduct of the defendant since the dissolution of said marriage has been uniformly good; and a defendant for whose adultery the judgment of divorce has been rendered in another state or country may not marry again in this state during the lifetime of the complainant unless three years have elapsed since the rendition of such judgment and there is no legal impediment, by reason of such judgment, to such marriage in the state or country where the judgment was rendered. But this section shall not prevent the remarriage of the parties to an action for divorce.” (As amd. by L. 1915, ch. 266, as amd. by L. 1919, ch. 265, eff. May 3,1919.)
The theory was that the statute did not, in express terms, manifest the legislative intent to render such marriage entered into in another State void. The view in New York has long been that prohibitions against remarriage are, wherever possible, to be treated as in the nature of penalties or restrictions and not to incapacitate the parties from contracting a valid marriage elsewhere. We have recognized, however, that a State may, by express legislative enactment, prescribe that a marriage during the prohibited period, though contracted elsewhere, will be treated as void in the State granting the decree and that penal consequences for such violation will attach in that State (Ponsford v. Johnson, 2 Blatchf. 51; 19 Fed. Cas. No. 11,266; Van Voorhis v. Brintnall, 86 N. Y. 18, supra; Matter of Ommang, 183 Minn. 92; Hills v. State, 61 Neb. 589, Note, 57 L. R. A. 169). (For the minority view, see Matter of Paine, [1940] Ch. 46, and Maurer v. Maurer, 163 Pa. Superior Ct. 264.)
The policy of the State of New York in these matters was made clear in Goodwin v. Goodwin (158 App. Div. 171). In that case there was before the court an action to annul a second marriage by reason of the fact that it was made within one year of the entry of a judgment in Colorado divorcing the defendant from a former husband. The Colorado statute forbade either party to remarry within one year from the granting of the decree. Within that year the parties were married in Illinois. The validity of the marriage in Illinois was conceded and the complaint for an annulment was dismissed. The court said (pp. 173, 174): ‘1 But the judgment in Colorado was integral. It did not await further consideration, and the courts *71 of a foreign State are bound to give full faith and credit to the judgment so far as the court had jurisdiction, but not to a statute prohibiting remarriage. * * * As its prohibition did not inhere in the judgment, but was a legislative prohibition fixing the status of divorced persons, it is ineffective in this state. ’ ’
Likewise, in Matter of Ommang (183 Minn. 92, 94-95, supra) the court held that a marriage in Minnesota within less than a year after a Wisconsin divorce was valid under Minnesota law, notwithstanding its invalidity under the Wisconsin statute. In that case the law of Wisconsin provided that it shall not be lawful for a divorced person to remarry within one year after the judgment of divorce was entered, and declared any such marriage within the year to be null and void. It is true that the statutes involved in these decisions did not use the phraseology of the Virginia statute, but the spirit of the decisions is in favor of upholding the validity of another marriage in violation of a prohibition against it in a decree of divorce of another State, where, in essence, that decree is final and not interlocutory. (See 23 Ore. L. Rev. 132, 137.) To sum up our conclusions, therefore, we hold that the decree of divorce entered in Virginia was, in its essence, an absolute and final decree. That was so under the decree itself and under the Virginia statute applicable thereto. At most, the dictum of the highest court of Virginia is to the effect that the decree was final for all purposes except the marriage of either of the parties during the prohibited period. It is also fair to assume from the decisions that the courts of Virginia would hold that if one of the parties died during the prohibited period of another marriage the decree would be treated as an absolute and final decree of divorce. That hybrid form of decree means nothing more than a prohibition against another marriage during a limited period which would render that marriage, wherever it took place, void in Virginia, and subject to civil and penal consequences in Virginia.
Our holding emphasizes the substance rather than the form and is in line with our own public policy to uphold the validity of a marriage, particularly where the rights and the property of our own citizens are directly involved, and when there is also involved the marital status of our resident, the first wife of the petitioner, against whom an ex parte divorce was granted in Virginia. The order below, therefore, should in all respects be affirmed, with costs to all parties appearing herein and filing briefs, payable out of the estate.

 Section 20-119 of the Virginia Code also contains the following provision which, of course, is not directly involved here, the divorce in this case being for desertion and abandonment: “In granting a divorce for adultery, the court may decree that the guilty party shall not marry again at any time; in which case, the bond of matrimony shall be deemed not to be dissolved as to any future marriage of such party, or in any prosecution on account thereof. But, for good cause shown, so much of any decree as prohibits the guilty party from marrying again, may be revoked and annulled, at any time after the expiration of six months from the date of such decree, by the same court by which it was pronounced.” (Code of 1919, § 5114.)
This statute has no application to a case in which the cause for divorce is desertion and abandonment (Shelton V. Shelton, 125 Va. 381). (See 4 Code of Virginia [1950], p. 430.)