REQUESTED BY: Senator John W. DeCamp Nebraska State Legislature State Capitol Lincoln, NE 68509
Dear Senator DeCamp:
This is in response to your inquiry concerning LB 335 presently before the Nebraska Legislature.
You first inquire `as to the constitutionality of the entire concept of making 1 1/2 million Nebraskans criminal because they suspect somebody may or may not be abusing an adult or neglecting an adult or a child and fail to immediately run to the police and report their suspicions.'
Section 2 of said bill requires any person who `has reasonable cause to suspect that a person 18 years of age or older has been the subject of abuse, he or she shall report such incident or cause a report to be made to the proper law enforcement agency. . . .'
Thus, the reporting requirement applies only to those who have `reasonable cause to suspect' abuse.
Section 10 of the bill makes it a Class V misdemeanor only for those required to report, as discussed above, whowillfully fail to report.
The extent of the knowledge required to make an act or omission criminal is more a matter of policy to be determined by the Legislature than one of constitutionality.
In 21 Am.Jur.2d, Criminal Law, § 137, pp. 270-271, is the following:
 Though the common-law concept of crime as constituted only from the concurrence of an evil-meaning mind with an evil-doing hand took deep and early root in this country, a completely different category of crimes has arisen under modern statutes, especially in the area of public welfare offenses. These are crimes which depend on no mental element, but consist only of forbidden acts or omissions. Where the legislature creates such an offense, criminal intent in any of its forms is not an element of the crime and need not be proved to justify a conviction, although some courts reconcile this with the older law of crimes by saying that where a statute denounces the doing of an act as criminal, the law imputes criminal intent from the doing of the act. The moral turpitude or purity of motive which prompted the act, and knowledge or ignorance of its criminal character, are immaterial on the question of guilt, and the only question is whether the prohibited act was done or the required act omitted. In other words, it is immaterial that the defendant acted in good faith or did not know that he was violating the law, . . .
This concept was set forth with approval by the Supreme Court of Nebraska in Markham v. Brainard, 178 Neb. 544,546, 134 N.W.2d 84 (1965) where the court stated: `Although the Legislature may enact criminal statutes which do not include criminal intent or guilty knowledge as an element of the crime, a penal law which makes criminal an act which the utmost care and circumspection would not enable one to avoid is invalid.' See also, State v. Vicars, 186 Neb. 311, 313,183 N.W.2d 241 (1971).
We find no such problem, nor any constitutional problem in this regard, in LB 335.
You next inquire `Additionally, I would like you to address the specific question of whether under this legislation if the clergy are included as having to report, a priest receiving information which gave him reason to suspect an individual might be abusing a child or an adult, must, under criminal law report said information provided to him in confessional directly to the agencies or authorities outlined in the bill.'
The answer to this question will depend entirely upon how the Legislature words any requirement that the clergy must make a report.
81 Am.Jur.2d, Witnesses, § 284, pp. 299-300, states in part:
 Although the authorities are somewhat uncertain as to whether a privilege for confessions to priests was recognized in common-law courts during the period of the Restoration, the almost universal expression of judicial opinion is that, following that period, the common law did not recognize a privilege with regard to communications to clergymen or other church or ecclesiastical officers. That rule still obtains except insofar as it has been changed by statute. . . . The tendency of the courts is toward a strict construction of such statutes and, generally speaking, only those communications are privileged which are made under the exact conditions enumerated in the statutes.
The Supreme Court of Nebraska has also adopted a strict construction. In Hills v. State, 61 Neb. 589 (1901) in construing a statute which provided that no minister or priest shall be allowed `in giving testimony, to disclose any confidential communication, properly intrusted to him in his professional capacity, . . .' In that case, a minister was called to the county jail by a defendant who was being prosecuted for bigamy. The defendant asked the minister to communicate with the defendant's first wife, apparently in an effort to keep her from acting as a complaining witness.
As to this communication, the Supreme Court of Nebraska stated:
 To render a communication to a minister of the gospel or priest privileged it must have been received in confidence. By this we do not mean that it must be made under the express promise of secrecy, but rather that the communication was in confidence, and with the understanding, express or implied, that it should not be revealed to any one. The mere fact that a communication is made to a person who is a lawyer, a doctor or a priest, does not of itself make such communication privileged.
(Id. at 594-595).
To reiterate, the answer to your second question depends entirely upon the way the matter is handled by the Legislature.
You next inquire if the attorney/client privilege is suspended whether an attorney would be required to report abuse discovered in the attorney/client relationship.
The law as to privileged communications between attorneys and clients is much broader than that of the clergy discussed above. As stated in 81 Am.Jur.2d, Witnesses, § 172, pp. 208-209:
 It is a long-established rule of common law that an attorney or counselor at law is not permitted, and cannot be compelled, to testify as to communications made to him in his professional character by his client, unless the client consents. This privilege exists independently of, but in many states is declared by, statute.
 The rule of privilege against the disclosure of confidential communications made by a client to his attorney is based upon grounds of public policy. When one seeks the professional advice and assistance of an attorney at law with the view of securing and enforcing his rights, or of defending himself against civil claims or criminal charges, it is necessary that he be able to make a full disclosure of all facts and circumstances that go to substantiate his claim or defense, and the law, by throwing this cloak of protection around communications between attorney and client, encourages the client to make full disclosure of the facts.
As you will note from the foregoing, the client may consent to disclosure; should the client consent the attorney would be required to report the abuse if his suspicion were reasonably based unless the Legislature exempts him.
As in the case of the clergy privilege, the privilege receives a strict construction from the courts.
It is our opinion that any statutory attempts to cut down upon the common law privilege of the attorney/client relationship, at least as to communications concerning the interest of the client, would be held unconstitutional by the Nebraska Supreme Court as an invasion of the Doctrine of Separation of Powers. In State ex rel. Hunter v. Kirk,133 Neb. 625, 276 N.W. 380 (1937), previous case is on the regulation of the legal profession was summarized as follows:
 It was further said: quoting from In re Integration of Nebraska State Bar Ass'n, 133 Neb. 283 `The practice of law is so intimately connected and bound up with the exercise of judicial power in the administration of justice that the right to define and regulate its practice naturally and logically belongs to the judicial department of our state government.'
 This court has exclusive power to define the practice of law. In the body of the opinion in In re Integration of Nebraska State Bar Ass'n, supra, it was further said: `The term `inherent power of the judiciary' means that which is essential to the existence, dignity and functions of the court from the very fact that it is a court.' (Emphasis added.)
 `The proper administration of justice is the main business of a court, and whatever obstructs or embarrasses its chief function must naturally be under its control.' In re Integration of Nebraska State Bar Ass'n, supra.
 It will thus be seen from the foregoing holdings that this court has the inherent power to define and regulate the practice of law and is vested with exclusive power to determine the qualifications of persons who may be permitted to practice law.
Id. at 625-626.
We are of the opinion that any curtailment of the common law attorney/client privilege, as outline above, would be difficult to defend as to constitutionality.
Very truly yours,
PAUL L. DOUGLAS Attorney General
Mel Kammerlohr Assistant Attorney General